# Camden and Amboy Railroad Co. *versus* Baldauf.

1. Though in Pennsylvania a common carrier may *limit* his responsibility by a general notice, yet the terms of the notice must be clear and explicit, and the person with whom the carrier deals must be fully informed of the terms and effect of the notice: the limitation is to be confined to cases of special contract, express or implied; and where the notice is in the English language and the passenger a German, who did not understand the English language, it is incumbent on the carrier to prove the knowledge by the passenger of the limitation in the notice.

2. If tickets, without more, are evidence of a special contract, yet they must be printed in a language which the passenger understands, or their terms must be explained to him.

[Camden and Amboy Railroad Co. *v.* Baldauf.]

3. Where a trunk was lost, and no proof given as to when or how it was lost, the legal inference is that it was lost or mislaid in consequence of the negligence or fraud of the carrier or his agent.

4. Where a trunk of a passenger contains specie, it is not incumbent on him to inform the carrier of its contents, unless inquired of, notwithstanding the advertisement of the carrier that passengers are "prohibited from taking any thing as baggage but their wearing-apparel, which will be at the risk of the owner ;" and where the extra weight of the passenger's baggage, including the trunk, was paid for, and the agents of the carrier took charge of it,—*Held,* that it was immaterial whether the trunk was to be viewed as baggage or freight, and that the carrier was responsible for its loss through the negligence or fraud of its agents.

5. Carriers cannot, even by a special agreement with the owner, discharge themselves from the ordinary care incumbent on a bailee for hire. Per ROGERS, J.

ERROR to the District Court, *Philadelphia.*

This was an action brought by Henry Baldauf against the Camden and Amboy Railroad and Transportation Company, as carriers of passengers and their baggage from New York to Philadelphia. The declaration contained three counts, charging the defendants below, 1. As carriers of passengers and their baggage. 2. As carriers of passengers and their luggage. 3. As bailees. The general issue was pleaded. The material facts appear in the special verdict.

February 16, 1849, jury called, and found a special verdict as follows :

That the defendants are carriers of passengers and their baggage, and not carriers of merchandise, from New York to Philadelphia. That the defendants had published in the public daily newspapers of New York and Philadelphia, from May to September 1846, an advertisement as follows, (prout copy of the same annexed, marked A.,) and delivered to the plaintiff, who is a German, and did not then understand the English language, as well as the other passengers, on the 22d August, 1846, a card or ticket as follows, (prout copy of the same annexed, marked B.) The plaintiff took passage in defendants' line upon the said 22d August 1846, and put on board the steamboat Independence, belonging to defendants, and forming part of defendants' means of conveyance, among other baggage, a trunk containing twenty-one hundred and one silver coins, commonly called French five-franc pieces, and also certain articles of wearing-apparel. The said trunk was delivered to the conductor or other agent of defendants on board of said boat. The extra weight of plaintiff's baggage, including the said trunk, was paid for, and the said agents did take charge thereof. The plaintiff did not notify the defendants or their agent that the said trunk contained coins or money, and no special agreement was made by them to accept or carry the same. The said trunk was lost, and not delivered to the plaintiff upon his arrival at Philadelphia, or at any time thereafter.

If the court shall be of opinion that the defendants are responsi-

[Camden and Amboy Railroad Co. *v.* Baldauf.]

ble for the injury arising from the loss of the money or silver coins aforesaid, then the jury find for the plaintiff, and assess the damage at twenty-two hundred and forty-five dollars ninety-five cents, ($2245.95.) If the court shall be of opinion that the defendants are not liable for the injury arising from the loss of the money or silver coins aforesaid, then the jury find for the plaintiff, and assess the damages at ten dollars.   The $10 was for the wearing-apparel.

*Advertisement* (A).—The Camden and Amboy Railroad Line for Philadelphia and intermediate places, will leave Pier No. 2, North River, foot of Battery Place by steamboat, to South Amboy, every day, (Sundays excepted,) &c.

Fifty pounds of *baggage* will be allowed to each passenger in this line, and *passengers are expressly prohibited from taking any thing as baggage but their wearing-apparel*, which will be at the risk of the owner.                                              I. Bliss, Agent.

*Ticket* (B).—Camden and Amboy Railroad Line.   Received payment in full for passage to Philadelphia, from forward-deck passenger, No. —   All *baggage* at the risk of the owner thereof. The proprietors binding themselves to no charge or care of the *same* whatever, either express or implied.

                                        Ira Bliss, Agent.

Keep this receipt until called for.

February 20th, 1849, motion for rule for new trial, and to show cause why judgment shall not be entered for defendant on the special verdict, on reasons filed and points reserved.

June 30th, 1849, judgment for plaintiff for $2245.95.

The defendants then sued out their writ of error.


It was assigned for error:

The court erred in entering judgment for Henry Baldauf, the plaintiff below and the defendant in error, for the sum of two thousand two hundred and forty-five dollars and ninety-five cents.


The case was argued by *Read* and *Mallory*, for the Company.— Upon the special verdict in this case, two questions arise:

The first is, as to the special agreement imbodied in the passenger-ticket or receipt, by which "all baggage" is "at the risk of the owner thereof.   The proprietors binding themselves to no charge or care of the same whatever, either express or implied."

The courts of this State have uniformly held that such an agreement is valid and discharged the carrier from all liability whatsoever, except in case of gross negligence or fraud.

This principle is distinctly recognised in Beekman *v.* Shouse, 5 *Rawle* 189, (1835,) in Bingham *v.* Rogers, 6 *W. & Ser.* 500, (1843,) and in Laing *v.* Colder, 8 *Barr* 484, (1848,) where it is said, "Since then, it has been expressly decided in Bingham *v.* Rogers, 6 *W. &*

[Camden and Amboy Railroad Co. *v.* Baldauf.]

*Ser.* 495, that a common carrier may limit his liability by notice to passengers, such as was given in this case, that the baggage is at their own risk. This must now be taken as the law of this State, and the court below asserted nothing beyond it."

The second question is whether, under the known course of the business of this company, in carrying passengers and their baggage, these defendants are liable for the loss of the very large amount of French silver coins placed in the trunk of the plaintiff without any information or notice whatever to the defendants or their agents, and contrary to their express prohibition.

The line was only a passenger line, and not in any manner a freight line, and the carrying of baggage was simply a consequence of the carrying of passengers. The question therefore is, what is meant by the term baggage of passengers; and this has been clearly and definitely settled in New York, not to include merchandise at all, nor bank-bills, nor gold or silver coins or money, particularly if the sums are large. Silver, which is carried in boxes of $1000 each, or in kegs of larger dimensions, is particularly a subject of freight, and liable not only to the ordinary charges for valuable articles, but is also often the subject of insurance by the carrier himself, and is very generally carried by the express lines, which are entirely unconnected with the steamboat and railroad companies.

As in Orange County Bank *v.* Brown, 9 *Wendell* 85, (1832,) a large sum of money in bank-bills, in an ordinary travelling-trunk, was not considered as included under the term baggage so as to render the carrier responsible for it. So in Pardee *v.* Drew, 25 *Wendell* 459, (1841,) NELSON, C. J., confirming his decision in 9 *Wendell*, extended the principle of non-liability to valuable merchandise placed in a trunk and carried as baggage; and in Hawkins *v.* Hoffman, 6 *Hill* 586, (1844,) the present chief justice of New York said, p. 589, 590, speaking of baggage, "It neither includes money nor merchandise. (Orange County Bank *v.* Brown, 9 *Wendell* 85; Pardee *v.* Drew, 25 *id.* 459.) It was suggested in the first case, that money to pay travelling expenses might perhaps be included. But that may, I think, be doubted. Men usually carry money to pay travelling expenses about their persons, and not in their trunks or boxes."

"It is undoubtedly difficult to define with accuracy what shall be deemed baggage within the rule of the carrier's liability. I do not intend to say, that the articles must be such as every man deems essential to his comfort; for some men carry nothing or very little with them when they travel, while others consult their convenience by carrying many things. Nor do I intend to say, that the rule is confined to wearing-apparel, brushes, razors, writing apparatus, and the like, which most persons deem indispensable. If one has books for his instruction or amusement by the way, or

carries his gun or fishing-tackle, they would undoubtedly fall within the term baggage, because they are usually carried as such. This is, I think, a good test for determining what things fall within the rule."

The same principle is stated by WILLARD, J., in Blanchard *v.* Isaacs, 3 *Barbour's S. C.* 389, (July 3, 1848,) "and by baggage, we are to understand such articles of necessity or personal convenience, as are usually carried by passengers for their personal use, and not merchandise or other valuables, although carried in the trunks of passengers, which are not designed for any such use, but for other purposes, such as sale and the like: Orange County Bank *v.* Brown, 9 *Wend.* 85; Pardee *v.* Drew, 25 *id.* 459; Hawkins *v.* Hoffman, 6 *Hill* 586."

The same principle is very clearly explained by Mr. Justice DANIEL, in The New Jersey Steam Navigation Company *v.* Merchants' Bank, 6 *Howard* 416, 417, (1848.) The learned judge says, "Whilst I am impressed with the strong necessity that exists for guarding against fraud or neglect in those who, by holding themselves forth as fitted to take charge of the lives, the health, or the property of the community, thereby invite the public trust and reliance, I am not prepared to say that there can be no limit or qualification to the responsibility of those who embark in these or similar undertakings—limits which may be implied from the inherent nature of the undertakings themselves, or which may result from express stipulation. It seems to me undeniable, that a carrier may select the particular line or description of business in which he engages, and that so long as he with good faith adheres to that description, he cannot be responsible for any thing beyond or inconsistent with it. The rule which makes him an insurer against every thing but the act of God or the public enemy, makes him an insurer as to performances only which are consistent with his undertaking as carrier. A common carrier of travellers is bound to the preservation of the *accustomed baggage of the traveller*, because of the known custom that travellers carry with them articles for their comfort and accommodation, and the price for which the transportation is undertaken is graduated on that presumption; but the carrier would not therefore be responsible for other articles of extraordinary value secretly transported upon his vehicle, because by this secresy he is defrauded of a compensation commensurate with the value of the subject transported, and with the increased hazards to which it is attempted to commit him without his knowledge or assent. But to render him liable, he must have received the article for transportation, and it must be a subject falling fairly within the scope of his engagement. Within this range he is an insurer, with the exceptions above stated. But a carrier may, in a given case, be exempted from liability for loss without fraud, by express agreement with the person for whom he

undertakes; for I cannot even imagine a principle creating a disability in a particular class of persons to enter into a contract fraught with no criminal or immoral element—a disability indeed extending injuriously to others, who might find it materially beneficial to make a contract with them."

The same rule prevails in Pennsylvania, McGill *v.* Rowand, 3 *Barr* 451, (1846,) and in a case decided by his honor Judge ROGERS, at Nisi Prius, (March 22, 1847,) of Levinson *v.* The Philadelphia and Trenton Railroad Company. See also Pudor *v.* Boston and Maine Railroad, 10 *Law Reporter* 117.

All baggage accompanying the traveller is governed by the same rules, whether it be the amount not exceeding 50 lbs., which is included in the regular fare, or the excess, for which additional fare is paid.

We submit, therefore, that the defendants are not liable for this very large amount of money carried in his trunk by a forward-deck passenger, without any notice or information whatever of its presence to the defendants or their agents.

*G. Remak* and *H. M. Phillips,* for Baldauf, the defendant in error. —The plaintiff was a German, ignorant of the English language, who went on board the steamboat Independence at New York, to take passage to Philadelphia. He had with him several trunks and other articles not in trunks, such as bedding, kettles, box, &c. &c.; and the agent of the company on board of the steamboat, after weighing out fifty pounds of baggage, received payment from the passenger for the surplus freight, including a large trunk with silver money in it, which was lost, and for the value of this the verdict was given. The whole testimony showed that it was the invariable custom of the company to allow passengers to take with them what and as much as they pleased, if the surplus, over fifty pounds, was paid for. By the advertisement (A) it will be seen that only "*fifty pounds of baggage will be allowed to each passenger,*" and in this case, the trunk lost was not baggage, (*eo nomine,*) but freight, because the true construction of the notice is *prohibition* of excess to a passenger, and not a refusal to carry when paid for beyond the price of a personal passage. Up to fifty pounds, the luggage of a passenger is taken free of charge as baggage, but beyond that weight, it is taken upon payment of the freight.

The ticket (B) it is clear the plaintiff could not read nor understand, yet it is urged as protecting the company from liability for loss.

Upon the facts of the case, the defendant in error contends that the company is liable either as carriers or bailees, and that the receipt of money for the transportation of the trunk made them responsible for its safe and careful delivery. In this country *specie* is the only recognised money, and certainly a traveller may take

that with him as included within the necessaries, which, it is admitted, are protected by the law.

The plaintiff in error raises two questions : First, as to the special agreement imbodied in the passenger-ticket, or receipt, by which " all baggage is at the risk of the owner thereof; the proprietors binding themselves to no charge or care of the same whatever, either express or implied."

A passenger-ticket is a thing known to us all as a small piece of pasteboard with something printed on it, generally much defaced; but it is found in the verdict that the plaintiff *did not understand the English language;* and nothing is more settled by the law than that a carrier, to excuse himself from performance of the duty belonging to his calling, must prove notice to the passenger. The testimony in this case, and the finding, show this was pretty much an emigrant line, and to hold the doctrine contended for *contra,* would be to subject to impositions those who are least able to look out for themselves.

An agreement may be made, and when made, is undoubtedly valid, for a party may waive any thing for his own benefit; but the cases cited by the plaintiff in error do not establish the exemption of the carrier, excepting where there is direct evidence *of notice to the passenger,* and the consequent acceptance of the terms : Beekman *v.* Shouse, 5 *Rawle* 179 ; Laing *v.* Calder, 8 *Barr* 484 ; 9 *Watts* 89, Attwood *v.* Reliance Co.; 19 *Wend.* 234, Hollister *v.* Nowlen; *id.* 251, Cole *v.* Goodwin.

In the case of The N. J. Transportation Company *v.* The Merchants' Bank, 6 *Howard* 366, Mr. Justice NELSON says, " A question has been made whether it is competent for the carrier to restrict his obligation even by a special agreement. It was very fully considered in the case of Gould *v.* Hill, 2 *Hill* 623, and the conclusion is arrived at that he could not. See also Hollister *v.* Nowlen, and Cole *v.* Goodwin, 19 *Wend.*" He goes on to say of the carrier, " He is in the exercise of a sort of public office, and has public duties to perform, from which he should not be permitted to exonerate himself without the assent of the parties concerned. And this is not to be implied or inferred from a general notice to the public, limiting his obligation, which may or may not be assented to. He is bound to receive and carry all the goods offered for transportation, subject to all the responsibilities incident to his employment, and is liable to an action in case of a refusal. And we agree with the court in the case of Hollister *v.* Nowlen, that, if any implication is to be indulged from the delivery of the goods under the general notice, it is as strong that the owner intended to insist upon his rights and the duties of the carrier, as it is that he assented to their qualification.

" The burden of proof lies on the carrier, and nothing short of an express stipulation by parol or in writing should be permitted to

[Camden and Amboy Railroad Co. *v.* Baldauf.]

discharge him from duties which the law has annexed to his employment. The exemption from these duties should not depend upon implication or inference, founded on doubtful and conflicting evidence; but should be specific and certain, leaving no room for controversy between the parties."

Angell, in his Treatise on the Law of Carriers, assumes the law to be as settled in Hollister *v.* Nowlen, and The N. J. Trans. Co. *v.* The Merchants' Bank, sec. 237, 238, 239, referring to Gould *v.* Hill, 2 *Hill* (N. Y.) 623; and Mr. Angell adds, "The reasoning of Chief Justice GIBSON, in Atwood *v.* Reliance Co., 9 *Watts* 87, was to the same effect, though the question was not decided."

In Fish *v.* Ross, 2 *Kell.* 349, it was held that notices, receipts, and contracts, in restriction of the liability of a common carrier as known and enforced in 1776, are void, *because they contravene the policy of law.*

To the same effect are Bennett *v.* Dutton, *N. Hamp.* 187; Bean *v.* Green, 3 *Fair.* 422; Thomas *v.* Boston Co., 10 *Met.* 470.

In 2 *Greenleaf's Ev.* sec. 215, it is said, "The right of a common carrier by general notice to *limit, restrict or avoid* the liability devolved on him by the common law, on the most salutary grounds of public policy, has been denied in American courts, after the most elaborate consideration."

That the burden of proof is on the carrier to show that the person with whom he deals is fully informed of the terms and effect of the notice, is established in *Story on Bailments*, sec. 560, 558; *Angell on Carriers*, sec. 247; 2 *Green. Ev.* sec. 216; Brooke *v.* Pickwick, 4 *Bing. Rep.* 218; Kerr *v.* Willan, 2 *Starkie* 53; and Hollister *v.* Nowlen, and Cole *v.* Goodwin, already cited.

And where notice at the office has been generally held sufficient, it is not so, says Davis *v.* Willan, 2 *Stark. Rep.* 279, where the party who delivers the goods *cannot read.*

Now while it may be conceded that a carrier can in Pennsylvania restrict his liability, it is certain that this doctrine has been most reluctantly recognised, and will be confined *to cases of notice or agreement, express or implied.* In the present case, knowledge of the party is negatived by the verdict, and it would be an abuse of terms to call the ticket or advertisement notice *per se*, the verdict finding specially that it was otherwise.

The second point of the plaintiff in error *assumes* too much: neither the evidence nor the verdict justifies the assertion that "it was contrary to prohibition," or that it was "without notice:" it is a *petitio principii*, for it is a part of the very question for present decision. It is true that one of their witnesses said, "the instructions of the company to me as conductor were to carry passengers and baggage alone, merchandise excluded;" but it was also in proof that the hands weighing the trunk said "there must be money in it."

[Camden and Amboy Railroad Co. *v.* Baldauf.]

It has been already said that this was not baggage as such, because it was separated from the passenger by separate payment. All the books assert that a carrier is liable for care of baggage, although not paid for, because it is included in a passenger's fare; by a parity of reasoning, once separated from the passenger, its carriage paid for, and its control taken from its owner, does it not become something other than ordinary baggage, and does not the taking it make the party liable, either as carrier or bailee for hire? It is immaterial which, in this case.

The authorities relating to the first point show that a carrier's notice, to be available to him, must be express and unambiguous, as well as direct to the party. In the present case, it at best amounts to a *refusal* to carry more than fifty pounds, which was the foundation of the new contract, for which the plaintiff paid and the defendants received, as stated in the special verdict. The *weight* of money in the trunk, over 1700 ounces, sufficiently indicated that it was not *wearing-apparel,* and the jury have found that *its weight was paid for and the* (defendant's) *agents did take charge thereof.* We then assert the broad doctrine of a general liability for all they carry, (unless in cases of fraud or intended concealment amounting thereto,) and as the verdict finds that the trunk was *lost,* that is in itself evidence of gross negligence, which would overcome any notice or restriction.

Next, may not the *money* of a passenger be considered as baggage? The advertisement saying that wearing-apparel only is included in that term, is not set up, as so limiting it, nor ought it to be, in defiance of the express proof of plaintiff's ignorance of any such advertisement. Coin is the only recognised money; paper currency is an excrescence, which may at any time be lopped off, and therefore the case must be considered with reference to money known to the law, coin being exclusively such. To say that a passenger carrier is not liable for such, or that he may refuse to take it, is greatly to abridge the convenience and facilities for travelling, because, as was remarked by Justice BELL, in Laing *v.* Calder, "the carrier is one whom, in a vast majority of instances, he cannot but choose to employ;" and especially would this be the case in regard to emigrants, whom and whose money it is the policy of the country to invite.

The case of the Orange County Bank *v.* Brown was for the loss of eleven thousand dollars, in *bank-bills*, (which are not money, but promissory notes,) and they, it was held, were not included in the term *baggage;* but *money* for travelling expenses was included, though not a large sum, as in this case, taken for the mere purpose of transportation : the judge said that the conduct of the plaintiff's agent was a virtual concealment as to the money, that "his representation of his trunk and the contents as baggage was not

[Camden and Amboy Railroad Co. *v.* Baldauf.]

a fair one, and was calculated to deceive the captain." The plaintiff in that case was a *bank* and not a *passenger*.

Phillips *v.* Earle, 8 *Pick.* 182 : the owner is not bound to disclose the nature or value of the goods ; but if he is inquired of by the carrier, he must answer truly. So, too, 4 *Bing. Rep.* 218.

The cases cited by plaintiff in error fail to establish that the money of a passenger, carried for his own use, may not be included as baggage, and a contrary deduction may fairly be made from them. In the case of Hawkins *v.* Hoffman, the judge expressly says that *baggage* is not confined to wearing-apparel. So, too, in Blanchard *v.* Isaacs, baggage is considered as only that which is paid for by the passenger's fare, and it excludes, as such, things not carried for the passenger's personal use, but for other purposes, such as a sale.

In the N. J. Trans. Co. *v.* Merchants' Bank, Justice NELSON puts it upon the ground of fraud ; while in the case cited by the plaintiff in error, McGill *v.* Rowland, 3 *Barr* 451, Mr. Justice ROGERS said, " Nor is it very obvious in what manner the court can restrict the quantity or value of the articles that may be deemed either proper or useful for their ordinary purposes. In the nature of things, it is susceptible of no precise or definite rule, and when there is an attempt to abuse the privilege, we must rely upon the integrity and intelligence of the jury to apply the proper corrective." In that case the plaintiff recovered for the loss of valuable jewelry, proved by the plaintiff's wife.

The case of Levinson *v.* The Phila. and Trenton Railroad Co. (N. P., 1847,) was the case of a travelling jeweller, who carried his store-goods in his trunk.

The case of Tudor *v.* Boston and Maine Railroad Co. related to the admissibility of the plaintiff's testimony, and has no bearing on this point.

Beekman *v.* Shouse, and Atwood *v.* Reliance, are again cited in favour of the defendant in error upon this second point.

We submit, therefore, that the lost trunk was not baggage, or, even if it were so, that the defendants are liable ; and that the judgment of the court below ought to be affirmed. A contrary doctrine, it is suggested, would be impolitic and promotive of carelessness or dishonesty, and would be withdrawing the wholesome protection of the law from travellers, the impositions upon whom, in all ages and countries, have become matters of by-word.

The opinion of the court, by ROGERS, J., was filed May 16.

ROGERS, J.—The general rule, according to the well-settled principles of the common law, is, that a common carrier is an insurer against every thing but the act of God or the public enemy. In Pennsylvania, however, it is ruled, not without great reluctance, that his common law responsibility may be limited or abridged by

the special terms of the acceptance of the goods. It is decided, it may be limited by a general notice that the baggage of a passenger is at the risk of the owner, provided the terms of the notice are clear and explicit, not liable to the charge of ambiguity or doubt; and provided further, which is indispensable, the notice is brought home to the employer. These principles are distinctly recognised in Beekman *v.* Shouse, 5 *Rawle* 189; in Bingham *v.* Rogers, 6 *W. & Ser.* 500; and Laing *v.* Calder, 8 *Barr* 484. On the ticket given to the plaintiff, as is found by the special verdict, notice is given that all baggage is at the risk of the owner, the proprietors binding themselves to no charge or care of the same whatever, either express or implied. It is truly said by BURROUGH, J., in Duff *v.* Budd, 3 *B. & B.* 177, that carriers are constantly endeavouring to narrow their responsibility, and to creep out of their duties, and that he is not singular in thinking that their endeavours ought not to be favoured. Of the soundness of this remark, this case affords a striking example. The company not only declare that the baggage is to be at the risk of the passenger, but they attempt to discharge themselves from all charge or care of it whatever. The proprietors say they bind themselves to no charge or care of the same whatever, either express or implied. There is a plain endeavour to shirk all responsibility whatever, even to the misconduct of their own agents, and to avoid the duty which the law casts upon them, to provide places for the safe custody of the goods, and persons whose business it is to take charge of such articles as are committed to their care. They undertake to carry for hire, and, by the very nature of their employment, to bestow, for the preservation of the goods, at least the ordinary care of a bailee for hire. From this duty I have no hesitation in saying they cannot discharge themselves, even by a special agreement with the owner. Such a stipulation would be void, being against the policy of the law. There is no principle in the law better settled than that whatever has an obvious tendency to encourage guilty negligence, fraud, or crime, is contrary to public policy. Such, in the very nature of things, would be the consequence of allowing the common carrier to throw off the obligation, which the law imposes upon him, of taking at least ordinary care of the baggage or other goods of a passenger. Under such a regulation no man's property would be safe, Cole *v.* Goodwin, 19 *Wend.* 251. The special verdict finds that the trunk containing the silver coins, five-franc pieces, and certain articles of wearing-apparel, was delivered to the conductor or other agent of defendants, on board of the boat; that the extra weight of plaintiff's baggage, including the trunk, was paid for, and the agents took charge of it; that the trunk was lost, and not delivered to the plaintiff on his arrival at Philadelphia, the place of destination, or at any time thereafter. The verdict omits to find when it was lost,

or how it was lost. As we are without proof on this point, the legal inference is, it was lost or mislaid in consequence of the negligence, or it may be fraud, of the defendants' agents. This would render the defendants liable, notwithstanding notice had been brought home to the plaintiffs. It is proper here to remark that neither concealment nor fraud can be imputed to the plaintiff. He was not bound to disclose the nature or value of the goods, unless inquired of by the carrier : in which case he must answer truly : Phillips *v.* Earle, 8 *Pick.* 182 ; 4 *Bing. R.* 218 ; Relf *v.* Rapp, 3 *W. & Ser.* 21.

Although he may limit the extent of his liability, yet the authorities are uniform that to discharge the carrier from responsibility, it is necessary to show clearly that the person with whom he deals is fully informed of the terms and effect of the notice. The exemption goes on the ground of a contract express or implied. *Angel on Carriers,* sec. 247 ; 2 *Green. Ev.* sec. 216 ; Brookes *v.* Pickwick, 4 *Bing. R.* 218 ; Kerr *v.* Miller, 2 *Starkie* 53 ; Cole *v.* Goodwin, 19 *Wend.* 251 ; Hollister *v.* Nowlen, 19 *Wend.* 234.

The facts found by the jury negative the idea of such a notice as amounts to a special contract. The plaintiff was a German, wholly ignorant of the English language. It is therefore a case of a passenger uninformed of the terms and conditions of the notice appended to the ticket on which the defendants rely for protection. The case of Davis *v.* Willan, 2 *Stark. R.* 279, rules that a notice at the office, when the party who delivers the goods cannot read, does not change the liability of the carrier. That case is in principle identical with this. It, in truth, would be absurd to hold, under the circumstances, the company exempted from their common law responsibilities, on the foot of a special or express contract, when he was ignorant of the terms of the proposed agreement. Granting that tickets in any case, without more, may be considered as evidence of a special agreement, *it is* surely not exacting too much to require the carrier to have his tickets printed and his advertisements made in a language which the passenger can understand, or that he should be required to explain to him the nature and effect of the proposed agreement. Although it may be granted that in this State a carrier may limit his responsibility, yet this principle has been reluctantly recognised, and must be confined to cases of special contract express or at least implied. The knowledge of the plaintiff of the contents of the notice, is negatived by the verdict. It is substantially found the plaintiff had no notice that his goods were carried at his own risk. In the absence of all proof of notice, the plaintiff had a right to rely on the common law responsibility of the carrier. The jury find that the extra weight of the plaintiff's baggage, including the trunk in which the specie was placed, was paid for by the plaintiff, and the agents of the company had charge of it.

[Camden and Amboy Railroad Co. *v.* Baldauf.]

Whether the specie is to be viewed as baggage or freight we conceive to be immaterial; for whether it be the one or the other, the defendants are clearly liable on two grounds; first, because they have failed to prove the nature and manner of the loss; and second, because they have also failed to bring home knowledge of the limitations and restrictions contained in their notice to the plaintiff. This renders them liable on the rule of the common law, as insurers against all losses except those occasioned by the act of God and the king's enemies.

Judgment affirmed.