# Caldwell *v.* United States Express Company, Appellant.

*Evidence—Striking out of testimony—Discretion of trial judge—Trial—Practice, C. P.*

Where one of several plaintiffs testifies without objection and without cross-examination, and the plaintiffs rest their case, the appellate court will not review the discretion of the trial judge in refusing subsequently to strike out the testimony, because it was based on the record of the firm not made by the witness personally.

*Carriers—Common carriers—Declaration as to value—Disguise of package—Fraud.*

In an action against a carrier to recover for loss of a package of jewelry, where there is no evidence of any attempt to disguise the package, and the evidence is conflicting as to whether the shipper at the instigation of the owner did or did not refuse to inform the carrier of the contents of the package, or value of the same, although requested to do so, the case is for the jury, and a verdict and judgment for the plaintiff will be sustained.

A shipper is not obliged as a condition precedent to his right to recover, to volunteer information as to the contents or value of a package, if no inquiry is made.

Argued Dec. 9, 1907.   Appeal, No. 39, Oct. T., 1907, by defendants, from judgment of C. P. No. 5, Phila. Co., Sept. T., 1903, No. 2,883, on verdict for plaintiff in case of Albert Caldwell et al., trading as J. E. Caldwell & Company, to the use of J. Albert Caldwell et al., trading as J. E. Caldwell & Company, v. United States Express Company.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to recover for loss of package of jewelry.   Before STAAKE, J.

The court charged in part as follows:

Now, the claim in this case as you know is brought by the firm of J. E. Caldwell & Company, the well-known jewelers of this city, against the United States Express Company, and it is to recover the value of one sapphire ring, $100, one ruby

ring valued at $100, one diamond ring valued at $170 and another ring of the value of $145, making the total $515. They aver that they are jewelers and silversmiths engaged in business in Philadelphia and that the defendant is a common carrier engaged in the transportation of merchandise and valuables, and it is admitted by both sides that on January .5, 1903, such a package as has been described to you was given into the care of the defendant company to be conveyed to the firm of Caldwell & Company, in the city of Philadelphia. Therefore, there is no question in the case as to whether the express company did receive the package and that the package was consigned to J. E. Caldwell & Company, Philadelphia. It is rather singular to the court that in the trial of this case we are left absolutely without any information as to what was paid by anybody for the actual handling of this particular package; whether it was a large amount or a small amount. My recollection is that there is no testimony upon that point, but of course if I am wrong in this your better recollection will correct me, as you must determine what the facts are in the case. The receipt in evidence fails to show us what was paid, and I recollect no testimony regarding that point.

Now, the court charges you that a common carrier cannot, of its own volition, by simply printing terms or conditions, limit such liability as it would otherwise have in a case of this kind. A familiar instance of that is the ordinary case of the attempt of a railroad company to limit its liability by imposing conditions sometimes printed upon its tickets. A common carrier cannot so limit its liability. Therefore, so far as the mere limiting of its liability to the sum of $50.00, if the value is not given, the court charges you as to that, that such limitation is not available as a defense in this case, but there comes a further defense which is, after all, the important question, which I will leave to you to determine, and that is, whether in this transaction, in the delivery of this package by Mrs. Richmond L. Jones, in the city of Reading, at her home on Fifth street, there was such a disguising of the package, such efforts at concealment, as made the conduct of Mrs. Jones at that time a fraud upon the express company.

It. is admitted as I understand from the argument of the learned counsel for the plaintiff, that if there had been a wrapping of a small package in a large piece of cloth, as was the fact in one of the cases submitted by counsel for defendant, and this was handed over to the express company as an ordinary piece of merchandise, with the intention of concealing the fact that in the interior recesses of that package there was a valuable diamond ring or any article of that kind, that, undoubtedly, would be an intentional effort to deceive the company as to the contents, or the nature of the package which the company was asked to carry. There are two things which you must consider in determining whether there was or was not such a fraud committed in this particular case. One of those things is the nature and character of the package in question. The other is, what actually took place in connection with the delivery of the package. [It was undoubtedly the duty of the common carrier in this case to inquire as to the contents of the package, to ask for a declaration of value. Now, what did actually transpire? Of course, the best evidence is possibly the testimony of the lady herself, who shipped the package, and she tells you in the evidence that has been submitted to you:] [5]

"Q. Did you ship this package yourself? A. I gave it to Harvey, my butler. Q. Did you give him any instruction about declaring the value to the express agent? A. No, sir, I did not. I never do. In fact, I am often not here when the package is given to the expressman. Q. As a matter of fact, didn't you tell your butler not to declare a value upon the package, as requested in Caldwell & Co.'s memorandum? A. No, sir, I would not have done that. I didn't think they meant anything of that kind. I thought it was for my accommodation, so I wouldn't have any bother about it. Q. I just want the fact as to whether you did or not. A. No, sir. If I had been asked, of course I would have put the value on; if anybody had asked me, if Harvey had asked me, of course I would have put the value on it. Q. But you did not in point of fact? A. I did not. Q. You did not have any conversation with the express agent for this package, did you, about ship-

ping the package? A. No, sir. I was upstairs. I don't think anybody did. Q. Will you kindly describe how this package was wrapped? A. When they sent it they had it wrapped and sealed, sealing-wax with their seal on it; but of course that is always too much trouble for me, I wouldn't do that, so I kept the same paper, and wrapped it up the same way, and tied it with the same twine, or just exactly as it was, only it wasn't sealed like they sent it; but I never seal anything. Q. Was there anything on the wrapper as you sent it to denote the value of the package? A. No, sir, there wasn't except the name; that would be a temptation to a great many people. I thought since you are speaking about it, that wouldn't make much difference to them, because everyone knows their name and the business they are in. But I never knew there was any danger in express companies; I thought that when I gave it to an express company it was safe; I was surprised. Q. Do you know whether or not this package was delivered to J. E. Caldwell & Co.?"

The answer to that question is not very important. It is admitted that the package was not delivered, and was never found, although you have heard what efforts were made by the express company to locate it. The company's memorandum spoken of by Mrs. Jones was the memorandum which has been referred to saying that in returning these goods she was not to place any value on them, as all their goods were insured.

Mrs. Jones handed the package to her butler, Harvey Scott, and he testified:

"Q. Do you remember handing to the express agent of the U. S. Express Co. who called here on January 5, a package addressed to J. E. Caldwell & Co., Phila.? A. I do, yes, sir. Q. Who gave you that package? A. Mrs. Jones. Q. What did she say to you when she handed it to you? A. Before the man came, she told me to telephone to the U. S. Express Co., which I did, and they came, and of course the package and basket at the same time were ready when they called. Q. About what time of the day was this when they called? A. Well, as near as I can tell, I suppose between ten and eleven

o'clock, around that time; I couldn't say exactly what time it was. Q. Did you know the contents of the package to be shipped to Caldwell & Company? A. No, sir. Q. Did Mrs. Jones say anything to you about answering the driver's question, if he would make any, as to the value of the contents? A. No, sir. Q. Didn't she instruct you not to declare the value of the package to the driver if he asked for the same? A. No, sir, not at the present time. Q. What do you mean by that, at the present time? A. Well, when I first came to the house Mrs. Jones always told me what to do in regard to sending packages, that is, in taking the receipt and so on. Q. Did she give you any general instructions, then, about not declaring the value of the package? A. No, sir. Q. Did you declare a value on this package shipped to Caldwell & Co.? A. No, sir. Q. Was there anything said about the package which would denote that it was a valuable one? A. I couldn't say that. I simply took the package from Mrs. Jones and took it right to the door. I never looked at it, as far as denoting the value of the package is concerned; I saw it was Caldwell & Co., and that is all."

The man Hain who signed the receipt says: "At the time, I was driving a team extra just for a few days and that is the reason I recall it. I was on the team that delivers goods from the city office to the depot, and all such goods are waybilled out of the city office and put off at the platform."

This witness described the package and I think we may say that it has been generally described as a package about six by four inches in size and two inches deep. Hain says that he went to 105 North Fifth street and "brought an empty basket and a package—an ordinary looking package wrapped up in dark brown paper. It didn't look to me as if it was anything valuable. It was an ordinary small package about that big square" (indicating).

This witness further says: "I wrote the receipt and asked them if there was any value on it and the colored man told me that Mrs. Jones said they need not—or the Mrs. said you need not place any value on it—so I gave him the receipt and just simply run my pencil through the receipt where the value

is. I should have put 'Value asked and not given,' but I didn't do that. I took the package and basket to the office at the depot.

"Q. Was there any evidence of sealing wax on the wrapping paper? A. No, not the slightest. Q. The only thing written on it was J. E. Caldwell & Company? A. Yes. Q. Did you know at that time who J. E. Caldwell & Company were? A. No, at that time I didn't know who they were."

That testimony, gentlemen, you will recollect in connection with the testimony of Mr. Lilly and Mr. Campbell who said that when they interviewed Mrs. Jones she said that she did not put any value on the package because it had been suggested to her that it was not necessary to put any value on.

[I shall leave the question entirely to you in this case, to determine whether under the facts as you have heard them testified to, there was in what transpired at the time of the actual delivery of this package between Mrs. Jones and Harvey Scott and Harvey Scott and the driver, or in the manner of wrapping up this particular package, such evidence as satisfies your mind that there was a deliberate and intentional effort upon the part of J. E. Caldwell & Company, the original shippers, or on the part of Mrs. Jones, so far as she represented them in sending this package back to Caldwell & Company, an intention to defraud.] [6] That is, whether the facts amount to a fraudulent concealment of things which this company ought to know. If you find that the evidence does satisfy your minds that there was a fraudulent concealment, and that the company was thereby defrauded, I charge you that your verdict should be for the defendant. If, on the other hand, you believe that this package, wrapped as it was, in exactly the same box, the same paper, tied with the same twine or string, and lacking only the sealing-wax—was not such a fraudulent concealment of facts which this company ought to have known, then you will be warranted in finding a verdict for the plaintiff.

Verdict and judgment for plaintiff for $425. Defendant appealed.

*Errors assigned* among others were (1) refusal to strike out testimony referred to in the opinion of the Superior Court; (5, 6) above instructions, quoting them; and (19) refusal of binding instructions for defendant.

*James F. Campbell,* for appellant.—It was the duty of the shipper to declare the contents or value in a case such as this even if not asked: Camden, etc., R. R. Co. v. Baldauf, 16 Pa. 67; Phillips v. Earle, 25 Mass. 182; Relf v. Rapp, 3 W. & S. 21; Coxe v. Heisley, 19 Pa. 243; Edelsohn v. U. S. Express Co., 4 Lack. Jur. 61; Southern Express Co. v. Everett, 37 Ga. 688; Oppenheimer & Co. v. U. S. Express Co., 69 Ill. 62; Warner v. Western Transportation Co., 28 N. Y. Super. Ct. 490; Gorham Mfg. Co. v. Fargo, 35 N. Y. Super. Ct. 434.

When the carriage of goods is secured by some fraud upon the carrier practiced by the shipper, the carrier does not occupy the position of a common carrier with regard to the goods: Gibbon v. Paynton, 4 Burrows, 2298; Chicago & Aurora R. R. Co. v. Thompson, 19 Ill. 578; Batson v. Donovan, 4 B. & Ald. 21; Southern Express Co. v. Everett, 37 Ga. 688.

*James Wilson Bayard,* with him *John G. Johnson,* for appellees.

OPINION BY HEAD, J., July 15, 1908:

In this action the plaintiffs seek to recover from the defendant, a common carrier, the value of a package of jewelry delivered to it in the city of Reading for carriage to them in the city of Philadelphia. In its affidavit of defense the defendant admitted "having received at Reading, Pennsylvania, on January 5, 1903, a package consigned to plaintiffs at Philadelphia, and that said package was lost, stolen or mislaid while in the custody of the defendant." Had there been nothing else in the case the jury would have been warranted, under all of the authorities, in rendering a verdict for the plaintiffs for the value of the package. This value was testified to by one of the plaintiffs, and as, apparently, there was no real controversy on this question of fact, his testimony was

received without objection, the witness dismissed without cross-examination and the plaintiffs rested their case. On the following day it appeared that the testimony of the witness was based on the records of the firm not made by him personally. The court was then asked to strike out his evidence but refused to do so, and this refusal is assigned for error. We think the motion to strike out, under the circumstances, was, at most, but an appeal to the discretion of the trial judge and we are unable to say that discretion was abused. The assignment is dismissed.

The real defense set up to avoid the liability that, prima facie, would flow from the undisputed facts already adverted to, is disclosed in the following averments contained in the affidavit of defense: "The facts in connection with said shipment are that Mrs. Richmond L. Jones of Reading requested plaintiffs to express to her, on approval, several jeweled rings, with which said request plaintiffs complied. In the package containing said rings was a request signed by plaintiffs to the effect that when Mrs. Jones returned said rings to do so in a plain wrapper and not to disclose the contents or value thereof to the express company. . . . The said Mrs. Jones in returning the said rings refused to inform the defendant's agent of the contents of the package or the value of the same although thereto requested, and the same was shipped and received as a package of small value and handled accordingly. . . . As plaintiffs perpetrated a fraud upon the company, in requesting the consignor to conceal the true contents and value of said package," the limited liability clause in the contract of shipment should be enforced and the recovery confined to the $50.00 therein mentioned.

We may concede, as an abstract legal proposition, that where a shipper, without any intention to defraud, but through ignorance, carelessness, or other like cause, so prepares his valuable goods for shipment, as to delude even the reasonably careful agents of the carrier into the belief they are not of any especial value, he may not afterwards recover such especial value in case of loss. This is founded in reason and justice because such conduct, on the part of a shipper, even though

not immoral because not consciously wrong, results in the same injurious consequences to the carrier, as if it had been the offspring of an intention to defraud, "for it goes to deprive the carrier of the compensation he is entitled to, in proportion to the value of the article intrusted to his care and the consequent risk he incurs; and it tends to lessen the vigilance the carrier would otherwise bestow:" Relf v. Rapp, 3 Watts & S. 21.

We are unable, however, to discover, either in the pleadings or evidence, anything that should have demanded, at the hands of the learned trial court, a discussion of this legal principle or warranted its application to the facts of the case. The issue of fact tendered in the affidavit of defense did not assert, even by implication, that the shipper had so carelessly or improperly prepared her package for shipment that the defendant was fairly and reasonably induced to believe that it was of but little value. And had such facts been averred they would have been wholly without support in the evidence because it was not denied that the rings had been returned packed in the same box, wrapped in the same paper in which they had been sent down, and that the package, so prepared, was plainly addressed to the plaintiffs, a long established and well-known firm of jewelers and silversmiths in the city of Philadelphia.

The defense actually set up was that the shipper had perpetrated a willful and intentional fraud on the express company in that she "refused to inform the defendant's agent of the contents of the package or the value of the same although thereto requested;" and that the plaintiffs should be visited with the consequences of such misconduct by her because she acted under their direction and for their benefit. Upon the issue of fact thus tendered the case went to trial and the parties produced their testimony. It was conflicting. In submitting the question to the jury the learned trial court said, inter alia, "I shall leave the question entirely to you, in this case, to determine whether, under the facts as you have heard them testified to, there was, in what transpired at the time of the actual delivery of this package between Mrs. Jones and Harvey Scott (her servant) and Harvey Scott and the driver (the

defendant's agent), or in the manner of wrapping up this particular package, such evidence as satisfies your mind that there was a deliberate and intentional effort upon the part of J. E. Caldwell & Co., the original shippers, or on the part of Mrs. Jones, so far as she represented them in sending this package back, an intention to defraud. That is whether the facts amounted to a fraudulent concealment of things which this company ought to know. If you find that the evidence does satisfy your minds that there was a fraudulent concealment and that the company was thereby defrauded, your verdict should be for the defendant." That the shipper was not obliged, as a condition precedent to plaintiffs' right to recover, to volunteer information as to the contents or value of the package, if no inquiry was made, seems to be conceded as the following quotation from the opinion of Mr. Justice Rogers in Camden & Amboy R. R. Co. v. Baldauf, 16 Pa. 67, printed in appellant's brief, will show: "It is proper here to remark that neither concealment nor fraud can be imputed to the plaintiff. He was not bound to disclose the nature or character of the goods unless inquired of by the carrier, in which case he must answer truly."

Did the shipper then, under direction of the plaintiffs, "refuse to inform the defendant's agent of the contents of the package or the value of the same although thereto requested?" If she did, manifestly a willful and intentional act of concealment, amounting to a fraud, was practiced on the defendant. Upon its ability to establish its averment of fact just quoted the defendant rested its defense. The evidence was conflicting, and a submission to the jury was necessary. Under the instruction previously quoted and the answers to defendant's points, the jury were clearly given to understand that if they accepted the defendant's evidence as to the conduct of the shipper, the plaintiffs' right to recover was gone. If on the other hand they accepted the evidence of Mrs. Jones and her servant, then no wrong was done either by the shipper or the plaintiffs, the only defense set up had failed, and the prima facie case of the plaintiffs was in no way overcome.

We think it would be useless to consider separately the

numerous assignments of error, many of which are in violation of our rules of court. The real question involved in the case is thus stated by the learned counsel for the appellant in the opening sentence of his brief: "Whether or not one of the large jewelry firms of the United States can defraud an express company of its lawful charges by not declaring the value of a shipment, when asked, or by so disguising the shipment that there is nothing about it to denote its true value." The jury have answered that there was no refusal to declare value when asked, and the record shows no trace of any attempt to disguise the package or that it was prepared in any other form than that usually assumed by like shipments. In our view the charge of the court truly directed the attention of the jury to the real issue and gave to the defendant the benefit of every legal principle it could fairly invoke in attempting to establish the single defense it set up.

Judgment affirmed.