## Delmont *v.* Adams Express Company, Appellant.

*Carriers—Loss of dog—Evidence—Case for jury.*

In an action against an express company to recover for the death of a bulldog, the case is for the jury, where the evidence shows that the animal was delivered to the carrier in a healthy condition, and protected in a strong, well-ventilated crate of ample size; that at destination the dog was found to be dead with no external evidences of the cause, it having been apparently asphyxiated; that the crate was smashed at one end; and that the defendant had started an investigation to determine the cause of death, and had abandoned or failed in determining it.

Argued Dec. 10, 1912. Appeal, No. 267, Oct. T., 1912, by defendant, from judgment of C. P. No. 2, Phila. Co., March T., 1907, No. 2,390, on verdict for plaintiff in case of Alf Delmont v. Adams Express Company. Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ. Affirmed.

Assumpsit to recover for the death of a bulldog. Before Staples, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $225. Defendant appealed.

*Error assigned* was in refusing defendant's motion for judgment n. o. v.

*John Lewis Evans*, with him *Thomas DeWitt Culyer*, for appellant.—It is a well-established principle of law in Pennsylvania that the death of an animal while in the possession of a carrier does not raise a presumption of negligence: Pennsylvania R. R. Co. v. Raiordon, 119 Pa. 577; Davenport v. R. R. Co., 10 Pa. Superior Ct. 47; Blackburn v. Adams Express Co., 43 Pa. Superior Ct. 276.

*Guilliaem Aertsen, Jr.*, for appellee.—While the mere death of an animal in the possession of a carrier does not raise a presumption of negligence, nevertheless such a presumption is raised, where, in addition to the fact of death, there is proof of an injurious accident tending to cause such death: Pennsylvania Railroad Co. v. Raiordon, 119 Pa. 577; Buck v. Pennsylvania R. R. Co., 150 Pa. 170; Blackburn v. Adams Express Co., 43 Pa. Superior Ct. 276.

OPINION BY ORLADY, J., April 29, 1913:

The plaintiff is engaged in the business of breeding, raising, and exhibiting dogs, and on October 5, 1906, he shipped by the defendant company, seventeen dogs from York, Pennsylvania, where they had been exhibited at a Bench Show, to Devon, Pennsylvania, his home. The dogs were severally placed in prepared, ventilated and slatted crates, made of special strength, about three feet long, two and one-half feet wide, and about three and one-fourth feet high, so as to assure plenty of space for air. On the arrival of the consignment at Devon it was found that one bulldog was dead, and the crate containing it was smashed at one end. When delivered to the express company this bulldog was in perfect health and had been exhibited and taken prizes at several shows. There was no affirmative proof offered by the plaintiff as to the immediate cause of the death of the dog, and no evidence was offered by the defendant in explanation of the partial demolition of the crate. The only evidence bearing on this subject is that of the plaintiff, viz.: "Q. You can form no opinion as to what the cause of death was? A. No, I thought at first that the dog had been smothered or hurt on account of the crate being broken. The crate was smashed on the end as if it fell off the wagon. Q. Did the carcass look as if the dog had been killed by violence, such as having his head broken or his head smashed in, or did he look as if he had been smothered? A. Well, he looked more as if he had been smothered, that was what he looked like to me, this particular crate was smashed

and the dog was lying dead in the crate.   Q. You couldn't state positively what had been the cause of his death? A. No, but the crate was smashed and I thought then that he died either of a bump or else being smothered."

The defendant asked for binding instructions in its favor, and this being refused a verdict was rendered in favor of the plaintiff.  The only assignment of error is the refusal of the court to direct a verdict in favor of the defendant, and its refusal to enter a judgment non obstante veredicto upon the whole record.

The dog had been purchased a short time before for the amount of the verdict rendered, and no serious question is raised on account of the difference between it and the declared value, $50.00, in the liability live stock contract issued by the company at the time of the consignment, though this question was submitted to the jury for their consideration, and they were instructed that neither the price alleged to have been paid or the value stated by the shipper was to be considered as conclusive of the value. Under all the evidence they were to determine what the dog was actually worth, and that if the plaintiff fixed the value at $50.00 for the purpose of evading or escaping the payment of extra charges upon this dog, and its real value was over $50.00, he could not recover in excess of that sum; but that if he was simply doing this as a matter of form, and at the suggestion of the defendant's agent, he could not be bound to that figure of the value of the dog, if the seventeen dogs were grouped and the value given in that way was considered a sort of general value, there being no inquiry made by the defendant's agent as to the value of each particular dog: Caldwell v. U. S. Express Co., 36 Pa. Superior Ct. 465.

The rule governing the liability of a common carrier in such a case has been repeatedly stated to be that, the mere happening of an injurious accident raises, prima facie, a presumption of negligence, and throws upon the carrier the onus of showing that it did not exist.  But the word accident, must be understood as referring to

such happenings as the exercise of proper care by the carrier could have prevented. The machinery for transportation is under his exclusive management and control, and he contracts for its sufficiency and for the skill and fidelity of his servants in charge of it. If, for any reason, an injurious accident happens to, or by reason of, that which the carrier provides for the transportation, the law, which imposes the exercise of the utmost care upon him, presumes the accident to be due to the want of that care and puts upon him the duty of successfully relieving himself from that presumption. But when the fact of an injurious accident is not shown to exist, the presumption which arises from it cannot be invoked by the plaintiff. The contract of the carrier does not insure against death generally, but only as it may be the result of an injurious accident in the course of carriage: Penna. R. R. Co. v. Raiordon, 119 Pa. 577.

Or as stated by Judge HENDERSON in Blackburn v. Adams Express Co., 43 Pa. Superior Ct. 276: "The carrier's contract was not one of insurance of the lives of the of animals transported, but one of indemnity against loss arising from negligence in the course of carriage. Unless the evidence tended to show that the loss was a consequence of some wrongful act of the defendant the plaintiff had no cause of action. A distinction exists between animate and inanimate objects, and between property liable to rapid loss or deterioration because of some inherent quality not connected with the manner of transportation and that which is not liable to such change. Where the injury may have been the result of natural causes not related to the carrier's responsibility, something more than the mere fact of the loss must be shown. The plaintiff must establish the defendant's default. . . . In the case of animate property the injury may be of such a nature as to indicate violent or careless handling in the course of transportation and therefore evidence of negligence proper for the consideration of the jury."

In the case before us there was a delivery to the express

company of a healthy animal, of a type especially tenacious of life and protected in a strong, well-ventilated crate of ample size. At destination the dog was found to be dead with no external evidences of the cause, it having been apparently asphyxiated, and the crate clearly exhibited a condition of having been violently and carelessly handled. No explanation was offered to show the care or attention given to this bulldog while in the control of the defendant company. The only effort in this direction was, that when the plaintiff requested that the carcass be examined by a veterinary surgeon to determine the cause of death, the body was taken charge of by the express company and consigned to the University of Pennsylvania for examination, but no further proof was adduced to show that such examination had been made, or if made, what the autopsy developed. While the plaintiff and the agent of the defendant company apparently agreed on their view of the carcass—that the dog had been smothered—no explanation was tendered as to the position or relation of this crate to other objects in the car in which it was shipped, though the means of doing so were clearly within the control of the defendant.

The physical condition of the smashed crate clearly showed that it had been subjected to such violence, rough handling or carelessness in the course of transportation as to raise a presumption of an injurious accident and to require an explanation by the carrier to relieve it from liability.

The jury might well conclude that the act which smashed the crate was the direct cause of the death of the dog by fatally injuring him or by inducing asphyxiation, or both.

The plaintiff had made out his case; the defendant started an investigation to determine the cause of death and abandoned or failed in determining it: Oldham v. U. S. Express Co., 25 Pa. Superior Ct. 549. The case was fairly tried and the judgment is affirmed.