# Maiorano, Appellant, *v.* American Railway Express Company.

*Common carrier—Uniform live stock contract—Negligence—Evidence—Insufficiency—Res Ipsa Loquitur.*

In an action of assumpsit to recover for loss of live stock consigned to express company it appeared that plaintiff made a shipment of canaries under a "Uniform Live Stock Contract." Plaintiff's statement averred that the birds were alive when shipped, but that when they arrived 24 were dead and others died in a few days. The birds were delivered from the station to plaintiff's place of business on a cold day. No negligence was alleged. Plaintiff based his claim solely on the contract of carriage.

*Held:* That the express company assumed no duty to resort to unusual care to protect the birds from inclement weather and that no negligence could be imputed by their condition on arrival.

In such case the doctrine of res ipsa loquitur does not apply.

Argued April 30, 1925. Appeal No. 65, April T., 1925, by plaintiff from judgment of C. P. Allegheny County, April T., 1925, No. 1522, on verdict for defendant, in the case of Michael Maiorano doing business as Art Pet Shop, v. American Railway Express Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Assumpsit for loss of canaries through shipment. Before MACFARLANE, J.

The facts are stated in the opinion of the Superior Court.

The court entered judgment in favor of the defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was the order of the court.

*Thomas L. Kane,* for appellant.—It is not necessary for the plaintiff to prove negligence on the part of the carrier: Laing v. Calder, 8 Pa. 479; Grogan & Merz v. Adams Express Co., 114 Pa. 523.

The fact of non-delivery of, or of damages to, the property makes out a prima facie case against a common carrier: Verner v. Sweitzer, 32 Pa. 208; Vuille v. Penna. R. R. Co., 42 Pa. Superior Court 567; Ed-

munds v. Phila. & Reading R. R. Co., 75 Pa. Superior Court 176; Delmont v. Adams Express Co., 53 Pa. Superior Court 506; Jakeway v. Lehigh Valley R. R. Co., 277 Pa. 236.

*Charles F. Patterson,* for appellee.—In the case of an interstate shipment of live stock under a special contract the plaintiff cannot recover without showing more than the fact of the death or ill health of the live stock at destination: Adams Express Co. v. Croninger, 226 U. S. 491; Adams Express Co. v. Wright, 229 U. S. 629; American Express Co. v. U. S. Horseshoe Co., 244 U. S. 58; Blackburn v. Adams Express Co., 43 Pa. Superior Court 276; Hall v. Pennsylvania Railroad Co., 60 Pa. Superior Court 235.

OPINION BY TREXLER, J., July 9, 1925:

Michael Maiorano, plaintiff, residing in Pittsburgh, purchased ninety-six live canaries from A. W. Robinson, of San Francisco, the birds being sent from the latter place to Pittsburgh through the American Express Company, the defendant. Plaintiff in his statement alleges that the birds were alive and well when given to the carrier at San Francisco but when they were delivered to the plaintiff twenty-four of the birds were dead and in five days all but six had died. No negligence is alleged. The claim is based solely on the contract of carriage. In short the carrier having received the birds well and having delivered them dead or sick, the plaintiff takes the position in his pleadings that the company is ipso facto liable for the loss. The birds were boxed in a standard board container with a wire front. The man who delivered them stated there was a paper around the box but the paper was torn. The shipment was taken from the station to plaintiff's place of business on a cold day. In the progress of the trial it appeared that the plaintiff based his recovery on the fact that when the package was delivered the

cover was torn. How far the paper was torn does not appear. The driver was able to see by a superficial inspection without opening the container that fourteen birds were dead. When the container was opened the plaintiff found twenty-four dead birds. The appellant also takes the position that the weather being cold, the birds should have been protected by a blanket or some other covering.

The shipment was an interstate one and was on the agreement for transportation that is known as "The Uniform Live Stock Contract." The third section of the contract provides: "The Shipper agrees that the Express Company shall not be liable for the conduct or acts of the animals to themselves, or to each other, such as biting, kicking, goring or smothering, nor for loss or damage arising from the condition of the animals themselves, or which results from their nature or propensities, which risks are assumed by the Shipper. The Shipper hereby releases and discharges the Express Company from all liability for delay, injuries to or loss of said animals and paraphernalia, from any cause whatever, unless such delay, injury or loss shall be caused by the Express Company or by the negligence of its agent or employees." As to the suggestion that the birds were killed by the drop in temperature, we consider that a risk which the shipper took under the contract of carriage. The birds admittedly are of a delicate constitution and easily hurt by exposure to cold. The company assumed no duty to resort to unusual care in protecting the birds from inclement weather. That the paper around the package was torn, would not be sufficient to draw an inference of negligence on the part of the carrier. We have no testimony that the packages were in a different condition when they were sent than when they were received. There are many surmises which we might indulge as to what caused the death of these birds. It may be that

they died from exposure to cold, from disease, or lack of water. We cannot impute negligence to the company by reason of their condition when they arrived at plaintiff's place of business at Pittsburgh.

Judge HENDERSON speaking for this court said in Blackburn v. Adams Express Company, 43 Pa. Superior Ct. 276: "The carrier's contract was not one of insurance of the lives of the animals transported, but one of indemnity against loss arising from negligence in the course of the carriage. Unless the evidence tended to show that the loss was a consequence of some wrongful act of the defendant, the plaintiff had no cause of action. A distinction exists between animate and inanimate objects and between property liable to rapid loss or deterioration because of some inherent quality not connected with the manner of transportation and that which is not liable to such change. Where the injury may have been the result of natural causes not related to carrier's responsibility something more than the mere fact of the loss must be shown. The plaintiff must establish the defendant's default. Where the property is inanimate and not subject to deterioration and is shipped in good condition the fact that it arrives in a badly damaged condition at its destination raises an inference of negligence as to the manner of transportation; and in the case of animate property the injury may be of such nature as to indicate violent or careless handling in the course of transportation and therefore evidence of negligence proper for the consideration of the jury." The doctrine of res ipsa loquitur does not apply in all cases. In the case of Hall v. Pennsylvania Railroad Company, 60 Pa. Superior Ct. 235, the fact that a horse was found dead in a car was not sufficient to draw the inference of negligence on the part of the company transporting it. In Delmont v. Adams Express Company, 53 Pa. Superior Ct. 506, recovery was allowed for the death of a

dog, but in that case the crate in which the dog was, had been shipped in good condition and was found smashed at destination, thus showing that it had been subject to violent and rough handling in the course of transportation. As stated before we can draw no inference favorable to the plaintiff from the fact that so many of the birds died.

In plaintiff's argument for the first time appears the proposition that the birds were shipped in two packages from San Francisco and arrived in Pittsburgh in one package. If this matter had been raised at the trial the fact could have been definitely settled. The bill of lading states that there were two boxes of birds and the receipt given by the railway company upon the payment of the c. o. d. charges states that there were two crates. There is no evidence that the birds were taken from the container in which they were shipped and put into another container. It is possible that the two containers were tied together but if the plaintiff wished to raise the point, he should have done so at the trial.

The assignments of error are overruled and the judgment of the lower court is affirmed.