# ARTHUR v. TEXAS AND PACIFIC RAILWAY COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 176. Argued January 24, 1907.—Decided February 25, 1907.

*Cau v. Texas & Pacific Ry. Co.,* 194 U. S. 427, followed as to binding effect of agreements in bills of lading exempting carrier from fire loss and claimed to have been forced on the shipper under duress and without consideration.
Where a railway company has no other place for delivery of cotton than the stores and platform of a compress company, where all cotton transported by it is compressed at its expense and by its order; its acceptance of, and exchange of its own bills of lading for, receipts of the compress company passes to it the constructive possession and absolute control of the cotton represented thereby, and constitutes a complete delivery to it thereof; nor can the railway company thereafter divest itself of responsibility for due care by leaving the cotton in the hands of the compress company as that company becomes its agent.

On the evidence in this case the question of whether the custodians of the cotton were guilty of negligence should have been submitted to the jury.

139 Fed. Rep. 127, reversed.

THE plaintiffs in error, who were plaintiffs below, filed their complaint against the railway company in the Circuit Court of the United States for the Western District of Arkansas, Texarkana Division. The case arose under the laws of the United States, as the defendant was incorporated under an act of Congress, passed March 3, 1871, which act was amended by one passed May 2, 1872, among other things changing the name of the corporation to that under which it was sued in this case. Upon the trial the court directed a verdict for the defendant, which was affirmed by the Circuit Court of Appeals, 139 Fed. Rep. 127, and the plaintiffs have come here by writ of error.

The action was to recover damages against the defendant for loss by fire of 50 bales of cotton, which were burned at Texarkana, Texas, September 19, 1900, and which the plaintiffs allege had been duly delivered to the defendant at that place, under a through bill of lading for transportation to Utica, New York. In the third clause of the conditions stated in the bill of lading was a provision "That neither the Texas and Pacific Railway Company nor any connecting carrier handling said cotton shall be liable for damages to or destruction of said cotton by fire." In the fifth clause of the bill of lading it was provided that "each carrier over whose road the cotton is to be carried hereunder shall have the privilege, at its own cost, to compress the same for greater convenience in handling and forwarding, and shall not be responsible for deviation or unavoidable delays in procuring such compression."

Although the cotton was destroyed by fire, plaintiffs alleged that they were not concluded by the fire clause, which they allege was void "because (1) said bill of lading was executed by said plaintiffs under duress; (2) said provision is unreason-

able; and (3) was without a consideration." The freight rates charged in the bill were the regular rates for the shipment of cotton over all lines of railway between Texarkana and Utica, New York, and no option was given to said plaintiffs, as they allege in their complaint, to receive any other form of bill of lading than that exempting the defendant from liability for loss of the cotton by fire, and plaintiffs allege they did not assent thereto.

It was also alleged that the place where the cotton was stored after its delivery to the railway company by the plaintiffs was not a safe place, being on the platform of the Union Compress Company; that the platform was not enclosed, and that there was no proper provision made to prevent the destruction of the cotton by fire, and that the cotton was at such place exposed to the sparks of passing engines, and that the employés of the Union Compress Company, which was the agent of the defendant, neglected to care for the cotton, which caught fire from sparks from a passing engine and was destroyed, September 19, 1900, whereby defendants became liable to the plaintiffs in the sum of $2,605, the value of the cotton. The defendant, by answer, put in issue all the allegations as to negligence by its own servants or by the servants or agents of the compress company, and also denied that the plaintiffs had ever delivered the cotton to the railway company; and alleged that at the time it was destroyed it was in the possession and control of the compress company, which was not its agent and over which it had no control.

Upon the trial evidence was given tending to prove the following facts: The plaintiffs, with offices at Texarkana, were extensive buyers of cotton, which they purchased in the surrounding country and had it transported to that place as a place of concentration, where it might be classified and subsequently transported to the East and other parts of the country by the railroads.

The Union Compress Company was an independent corporation, doing business at Texarkana, as a compresser of cotton,

which it compressed for the various railroads having tracks
at that place. The compress company had a platform on
its own land, of about 400×600 feet, upon which cotton was
delivered from wagons and from railroad cars, and the re-
ceipt of the cotton was acknowledged by the compress com-
pany. From this platform cotton was loaded on the re-
spective cars of the different railroads, the tracks of which
surrounded the platform on three of its sides. This platform
was within the State of Texas. Substantially all the cotton
received at Texarkana was received at this platform. The
local platform of the defendant company was not calculated
to receive cotton for shipment by the company, on account
of its small size, and the defendant's agent testified that he
would not know what to do with cotton if offered at this
platform, except to send it to the platform of the compress
company. When cotton was placed on the platform of the
compress company it did not then compress it, but it remained
there until further orders were given, as herein stated. After
delivery on the platform, and after the shipper had procured
the written acknowledgment of the receipt of the cotton by
the compress company, the practice was for the shipper,
when he was ready to have it shipped, to go to the railway
company, and upon the surrender of the receipts of the com-
press company to the agent of the railway company the ship-
per would receive from such agent a bill of lading for the
cotton, which acknowledged its receipt by the company
and the place and person it was consigned to, and the ship-
per had nothing further to do in regard to the cotton. He
issued no orders for compressing it, and was not allowed to
route it by any particular route. He would identify the
cotton covered by the bill and give the destination point
of the cotton and the name of the consignee, and there his
right ended. The railroad company, when it received from
the shipper the compress company's receipt, and gave its bill
of lading to the shipper, took the receipts to the compress
company and gave them up, and directed the company to

compress the cotton and obtain insurance upon it covering the responsibility of the railroad company, and load it into cars to be designated by the railroad company's agent. It was a general understanding between the railroad company and the compress company that when the former delivered the cotton receipts to the compress company it was to compress the cotton, obtain the insurance and give the policies to the agent of the railway company, and ship the cotton on the cars pointed out by the railway company's agent. There is no evidence that the compress company ever compressed cotton at the orders of the shipper, or charged him for the storage of the cotton on the platform. . The compressing was in fact done by the compress company for the railway company, for its convenience, by its direction and at its cost. While the cotton was being compressed the compress company was not under the control of the railway company in matters relating to the mode and manner of compressing, nor were the employés of the compress company under any control by the railway company, but the compress company followed the orders of the railway company when to compress and where to load the cotton after compressing.

This customary way of doing business was followed with regard to the cotton in question. It was received on the platform of the compress company from plaintiffs, and receipts given for it to them. These receipts were taken on September 17, 1900, to the agent of the railway company, who thereupon signed and delivered a bill of lading to plaintiffs, acknowledging the receipt of the cotton to be transported to Utica, New York, at named rates. The agent of the railway company then took these receipts which plaintiffs had handed to him, and delivered them to the compress company and gave written instructions, signed by such agent, to the compress company on a form customarily used, and which ran thus: "I have this day issued on your compress receipts bill of lading to W. A. Arthur & Company for 50 bales of cotton, (marks, number of bales, and total weight given.) Do-

mestic. Compress and ship the above cotton," as stated in directions. The compress company, when its own receipts were delivered to it by the railway company's agent, in accordance with its general custom, caused this cotton to be insured for the benefit of the defendant company and in the name of that company, and delivered the policies to the agent of the railway company, who forwarded them to division headquarters at Dallas, Texas. The compress company paid for the insurance under the direction of the railway company.

It was while the cotton was still on the platform and not yet compressed that it was burned.

The order adopted by the Texas State Railroad Commission, which was put in evidence, reads as follows:

"Thirteenth. When cotton is tendered to railroad companies upon compress platform, which is situated on the track of such railroad companies, it shall be the duty of the railroad companies to take charge of and receipt for such cotton in the same manner and on the same terms as they would receive and receipt for cotton when taken at its own depot or platform erected for such transactions; provided, however, that the shipper or the compress company shall in such cases assume the additional risk of insurance involved by such act of the railroad company."

The rule of the defendant was also put in evidence, and reads as follows:

"Rule Eleven. When cotton is tendered this company upon a compress platform which is situated on the track of this company agent shall take charge of and receipt for such cotton in the same manner and on the same terms as he would receive and receipt for the cotton if tendered him at this company's depot platform or other places assigned by it for such transactions; provided, however, that the shipper or the compress company shall, in such cases, assume the additional risk of insurance involved by such act of this company."

*Mr. William H. Arnold*, with whom *Mr. James K. Jones* and *Mr. James K. Jones, Junior*, were on the brief, for plaintiffs in error:

The cotton had been delivered and accepted, and the liability of the defendant as a common carrier existed at the time of the fire.

.Upon the delivery and acceptance of goods the carrier's liability is the same as when the goods are in transit.

The delivery of goods for shipment to an agent of the carrier duly authorized to receive them, or who is clothed with apparent authority and has been accustomed to receive goods for carriage, is sufficient to bind the carrier. Goods must be tendered at a time and place where the carrier is accustomed to receive freight. A deposit of the goods may amount to a delivery when there is proof of a constant and habitual practice and usage on the part of the carrier to receive goods for transportation when they are deposited for it in a certain place; proof of such practice is sufficient to show a public offer by the carrier to receive in that way, and to constitute an agreement between it and the shipper by which goods when so deposited will be considered having been delivered to it without further formality. 5 Am. & Eng. Ency. of Law, 2d ed., 181; *Pratt* v. *Grand Trunk Ry. Co.*, 95 U. S. 336.

The duty of loading freight of any kind upon cars, rests primarily upon the carrier. It is not necessary to constitute a delivery to a carrier that the goods be loaded upon the cars. 5 Am. & Eng. Ency. of Law, 2d ed., 189; *Bulkley* v. *Naunkeag Steam Cotton Co.*, 24 How. 386; *Fitchburg Ry. Co.* v. *Hanna*, 6 Gray (Mass.), 541.

A limitation against liability is not operative where the loss occurred by reason of negligence. *Railroad Co.* v. *Lockwood*, 17 Wall. 383; *Bank of Ky.* v. *Adams Express Co.*, 93 U. S. 174; *Inman* v. *Railway Co.*, 129 U. S. 128.

The defendant was negligent-in detaining and storing the cotton with the compress company on its platforms, a place

known to the defendants to be unsafe, the cotton was kept unprotected against fire.

The compress company was the agent of the defendant, charged with the protection of the cotton, for whose negligence the defendant was liable, and it negligently left the cotton exposed, and failed to take the ordinary precautions to guard or watch it, and did not use the means in its power to prevent its loss. The compress company provided no protection against fire, and defendant knowing this, is liable for the loss of plaintiff's cotton.

Whether these acts on the part of the compress company and its employés constituted negligence which contributed to the loss of the cotton should have been left to the jury, since the compress company was the agent of the railway company in custody of the cotton. The authorities clearly sustain the proposition that the railway company is liable for the negligence of the compress company and its employés. *Bank of Ky. v. Adams Express Co.*, 93 U. S. 174; *Block v. Merchants' Dispatch T. Co.* (Tenn.), 6 S. W. Rep. 881; *Boscowitz v. Express Co.*, 93 Illinois, 523; *Christenson v. Express Co.*, 15 Minnesota, 270 (Gil. 208); *Transportation Co. v. Oil Co.*, 63 Pa. St. 14.

The fire exemption in bill of lading was void for duress.

The evidence leaves it clear that no option was given or afforded plaintiffs for the shipment of their cotton except on the terms prescribed by the bill of lading. Here was a plain coercion on the part of the defendant requiring the plaintiffs to accept this form of bill of lading or none at all.

The fire clause in bill of lading if valid was not in force while cotton was detained for compression.

One who has by contract assumed certain liabilities cannot free himself therefrom by the employment of an independent contractor, and this principle has been held to be applicable when the contract is merely one implied by law. 16 Am. & Eng. Ency. of Law, 204; *Montgomery Gas Light Co. v. Montgomery R. Co.*, 86 Alabama, 373; *Atlanta &c. R. Co. v.*

*Kimberly*, 87 Georgia, 161; *Waller* v. *Lasher*, 37 Ill. App. 609; *Edwards* v. *N. Y. &c. Ry. Co.*, 98 N. Y. 245.

*Mr. David D. Duncan*, with whom *Mr. John F. Dillon* was on the brief, for defendant in error:

The stipulations in the bill of lading that defendant should. not be liable for the loss or destruction of the cotton by fire, nor for loss or damage thereto by causes beyond its control, or not occurring on its own line, and that in having the same compressed it should not be responsible for deviation or unavoidable delays, are all valid and binding.

As to validity of the fire clause in identically the same kind of a bill of lading, and for the same fire see *Cau* v. *T. & P. Ry.*, 113 Fed. Rep. 91; *S. C.*, 194 U. S. 427.

While the shipper might insist on the railway company receiving and transporting his property under his common law liability, he could only compel it to transport to the end of its line. He would have no right to demand a bill of lading beyond the line of the initial carrier. *Railway* v. *Sharp*, 40 S. W. Rep. 71; *Ry.* v. *Hurst*, 67 Arkansas, 407; *Exp. Co.* v. *Welcome*, 29 S. W. Rep. 34.

The compress company was not the agent of the railway company.

The compress company acted independently of the railway company, and selected and provided its own platform and appliances for storing cotton, its own process for pressing the same, and its own appliances for extinguishing fire, and the railway company had no authority or right to make any change, or in any way or manner whatever direct or control the compress company or its servants in the manner of doing the work, or of providing appliances or places for the work.

There was no actual delivery to the defendant. It had no control over the cotton, and no right to handle it, and had nothing else to do with it, until it was loaded on the cars.

The compress company was a contractor for whose negligence defendant in error cannot be held responsible.

The compression of the cotton was a collateral and independent undertaking of the Union Compress Company, and the injury did not result from the acts called for or rendered necessary by the contract.

Defendant in error did not contract or agree with plaintiff in error to put the cotton in proper condition for transportation, but only reserved the right to do so, without rendering it liable for deviation or unavoidable delays. *Bank* v. *Express Company*, 93 U. S. 174, distinguished.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The plaintiffs, in order to avoid the obstacle in the agreement in the third clause of the bill of lading, providing that defendant was not to be liable for damages to the cotton by fire, contend, as set up in the complaint, that the clause in the bill of lading was received under duress, and that it was unreasonable and without consideration. These contentions have been answered and overruled, upon much the same evidence, in the case of *Cau* v. *Texas & Pacific Ry. Co.*, 194 U. S. 427, and need not be further discussed.

With the fire clause in force, it became necessary for the plaintiffs, in maintaining their action, to show that defendant had received the cotton, and that it was destroyed through the negligence of the defendant or its agents, as the exemption would not apply to a case of damage occurring through such negligence. *Bank of Kentucky* v. *Adams Express Company*, 93 U. S. 174. We are of opinion, after carefully reading the record, that there was evidence enough to be submitted to the jury upon the question of negligence in the care of the cotton while on the platform.

This leaves the questions whether there was a delivery of the cotton to the railway company, and whether the compress

company, at the time of the fire, was the agent of the railway company as to that cotton.

Upon the evidence in this case, was there a delivery?   The evidence showed that the cotton was not delivered on the platform by the plaintiffs for the purpose of being compressed for them by the compress company.  The order to compress was subsequently given by the railway company.  That company had no other place for the delivery of the cotton to it than at this platform, but, as there were three companies with tracks at the platform, with either one of which the shipper might contract for the transportation of the cotton, it cannot be held that there was at the time of the delivery of the cotton at the platform a delivery to the defendant, especially as the compress company itself acknowledged the receipt of the cotton.  But when these receipts were handed by the plaintiffs to the defendant's agent, who took them and issued a bill of lading to the plaintiffs, the constructive possession and the entire control of the cotton passed to the defendant.  It could then, if so minded, have taken the cotton and loaded it on cars and taken it away without having had it compressed.  It was, however, compressed by its own order, given in writing to the compress company, and for its own convenience and at its own cost, and the insurance was obtained by its direction by the compress company, in the name of the defendant and for its benefit, and such policies were delivered to the defendant and sent by its agent to Dallas.  Most probably the cost of compression and insurance was paid by the plaintiffs in the rate paid by them for the transportation of the cotton, as that cost was one of the factors which may be supposed to have entered into the rate of freight charged by the defendant; but the total sum paid for transportation by plaintiffs left the matter with defendant to compress and insure if it saw fit, which it probably would think fit to do in all cases as an ordinary business precaution.  The fact that in getting the cotton compressed the railway chose to have it done by an independent con-

tractor, over whose acts it had no control while the cotton was being compressed, and the fact that it would order the compress company after compressing to load the cotton on cars selected by defendant's agent, did not in any way affect the fact that the cotton had been received by the railway company, and that it was thereafter subject to its full control. The defendant could not divest itself of the responsibility of due care by leaving the cotton to be compressed and loaded by the compress company. The latter company was, while so acting, the agent of the defendant, chosen by it, and, as such, the defendant was responsible for any lack of proper care of the cotton by the compress company. *Bank of Kentucky* v. *Adams Express Co.*, 93 U. S. *supra*.

It is urged that the case cited does not cover the facts herein, because in the reported case the attempt was to secure the immunity of the defendant express company from the consequences of the negligence of the railroad in doing the very thing that the express company had agreed to do, viz., transport the money; while in the case before us the negligence of the compress company (assuming there was such) was not in transporting the cotton, which the railway company had agreed to do, but in caring for it while awaiting compression. We see no difference, in fact, which would lead to a different result.

The compression was done for the convenience of the railroad company, after the company had received the cotton and before the actual transportation had commenced. In order to enable it the more conveniently to do the work of transportation it cannot divest itself of its obligation to exercise due care while the cotton is in the control of the compress company, although the latter is an independent contractor and not under the immediate control of the railway company while doing the work of compression in its behalf. There would be no justice in such holding, and we are clear it would violate the general rule that the carrier, after the freight has been received by it, must be regarded as liable,

at least, for the negligence of its own servants, and also for that of the servants of an independent contractor, employed by it to do work upon the freight for its own convenience and at its own cost.

In *California Insurance Co.* v. *Union Compress Co.*, 133 U. S. 387, the question was simply as to the liability of the insurance company on a policy of insurance against fire, issued by it to the Union Compress Company upon cotton in the possession of the compress company for compression, and which belonged to divers other parties. The policy insured the cotton for the plaintiff while "in bales, their own or held by them in trust or on commission." The defense was that as the compress company did not own the cotton and the beneficiaries under the policy were its owners, that no interest of any carrier was covered by the policy. The court held that the railway companies were beneficiaries under the policy, because they had an insurable interest in the cotton, and to that extent were its owners, and that it was held in trust for them by the plaintiff. The railway companies had issued bills of lading upon the surrender of the receipts of the compress company. It was held that where the original depositors of the cotton had surrendered to the railway companies the receipts which they had taken from the compress company, that those companies became substituted in the relation to the compress company, which before had been held by the depositors of the cotton; that the railway companies thus became the beneficiaries of the trust so far as the compress company was concerned, because they thus became the persons to whom that company owed the duty of bailment, and the persons entitled to demand possession of the property from the plaintiff. The policy also contained a provision that it should be void if there were any change in the possession of the insured property, and the defendants insisted that there was such a change, caused by the signing of the bill of lading by the railway companies in return for the receipts given by the compress company upon the de-

posit of the cotton with the latter company, although no actual change had taken place and 'the cotton still remained in the custody of the compress company. It was, however, held that the railway companies, in acquiring the receipts of the compress company and issuing bills of lading for the cotton, took only constructive·possession of it, and the plaintiff retained actual physical possession of it and did not lose any element of possession necessary to give it the right to effect the insurance for its own benefit and as bailee·or agent for the protection of the railway companies, although the railway companies' was · the right to ultimate possession, which passed to them by the original deposit of the cotton receipts given by the plaintiff.

The question of whether there had been a change of possession within the meaning of that expression as used in the insurance policy, is entirely different from 'that of whether immediate control of the cotton passed to the railway company by virtue of the delivery of the bill of lading in this case, so as to render the company liable for any neglect by it or its agent in regard to the subsequent care of the cotton. In the case at bar, not only was there a constructive possession by the railway company, but that company assumed full control of the cotton, and gave directions to the compress company what to do with it.

In *St. Louis &c. Railway Company* v. *Commercial Union Insurance Co.*, 139 U. S. 223, the question was also in regard to insurance, · the insurance company ·endeavoring to collect from the defendant what it had paid to the owners of the cotton. In that case the cotton which had been destroyed by fire was in the possession of the compress company, and the railway company had never given any bill of lading for it. The insurance companies had issued policies upon and delivered them to the owners of the cotton, and when the cotton had been destroyed by fire the companies paid the losses and claimed that the railway company was liable under the contract which the company had made with the compress

company to receive the cotton and transport it over its railroad across the Arkansas River to the press of the compress company in Argenta, a distance of a mile and a half. The insurance companies insisted that by the failure of the railway company, under its contract with the compress company, to transport this cotton as fast as it came in, the amount of the cotton became so great as to constitute a public nuisance, as it was piled up in the compress company's warehouse and overflowed into the adjoining streets. This court held that, as there had been no bills of lading issued by the railway company for the cotton which had been destroyed, the failure of the railway company to furnish sufficient transportation for the cotton to the compress company, while it may have been a breach of the contract between the railway company and the compress company, yet such breach created no liability in contract or tort to the owners or insurers of the cotton or to any other person. The court, at page 237, said: "This cotton, certainly, was in the exclusive possession and control of the compress company. The railway company had not assumed the liability of a common carrier, or even of a warehouseman, with regard to it; had given no bills of lading for it; had no custody or control of it and no possession of it, actual or constructive, and had no hand in placing or keeping it there."

In speaking of the issuing of bills of lading by the railway company for certain other cotton and what effect it had upon the rights of the parties, in the case then under consideration, the court said, page 238:

"There is nothing else in the case, which has any tendency to show that the railway company had or exercised any control or custody of the cotton, or of the place where it was kept by the compress company, before it was put upon the cars by that company. The railway company evidently neither considered itself, nor was considered by the compress company, as having assumed any responsibility for the care or custody of the cotton, until it had been insured in its behalf and loaded

upon its cars.' The evidence warranted, if it did not require, the inference that the bills of lading were issued merely for the convenience of all parties, and with no intention of making any change in the actual or legal custody of the cotton until it was so loaded."

Such is not the case here..

In *Missouri Pacific Railway* v. *McFadden*, 154 U. S. 155, the case was decided upon the facts therein stated, which were that it was understood both by the carrier and the shipper that the cotton was not to be delivered at the time the bills of lading were issued, the cotton at that time being in the hands of the compress company, which compress company was the agent of the shipper, it being the intention of the parties at the time the bills of lading were issued that the cotton should remain in the hands of the compress company, the agent of the shipper, for the purpose of being compressed. These allegations were made in the answer of the company, which was excepted to and their truth was therefore admitted. The trial court had, nevertheless, held the company liable for the loss of the cotton. This court said (page 160): "The case presents the simple question of whether a carrier is liable on a bill of lading for property which at the time of the signing of the bill remains in the hands of the shipper for the purpose of being compressed for the shipper's account, and was destroyed by fire before the delivery to the carrier had been consummated." The court held that under such circumstances there was no liability on the part of the common carrier, because it had never had the cotton delivered to it, the issuing of the bill of lading being subject to the intention of the parties, and the cotton remaining in the hands of the compress company as agent of the shipper.

The facts in the case at bar are totally different.

Stress was laid in the argument before us upon the fact that under the thirteenth rule of the Texas Railroad Commission the defendant was bound to sign the bill of lading when the receipts of the compress company were presented

to the railway company, and that, therefore, the defendant cannot be held to have become liable by virtue of the delivery of the bill of lading in question upon such a purely arbitrary order. It is also urged that the eleventh rule of the defendant, which is set up in the foregoing statement and which is to the same effect as the order of the railroad commission, was adopted simply pursuant to that order, and, therefore, no liability attaches from the bill of lading issued under the circumstances of this case. We think the argument is not sound. The rule of the Texas commission applies to a case when the cotton is tendered to the railway company, although at the time it is upon the compress company's platform. Now if the railway company did not regard the presentation of these receipts as in fact a tender to the railway company of the cotton in question, or if it were not a valid tender of the cotton, it could have refused to sign the bill of lading. The same may be said of rule eleven of the company itself. The company evidently regarded the cotton as tendered them, and issued the bill in acknowledgment of the fact of such tender.

We think the evidence in this case made out a delivery to and acceptance by the railway company of the cotton in question, and that the compress company had the actual custody of the cotton as the agent of the railway company, and the question of whether the persons in whose custody it was, at the time of the fire, were guilty of negligence was a question which should have been submitted to the jury.

The judgment of the Circuit Court of Appeals and that of the Circuit Court should be reversed and the case remanded to the Circuit Court with directions to set aside the verdict and to grant a new trial.

*Reversed.*