# Augustine, Appellant, *v.* Baltimore & Ohio Railroad Company.

*Carriers—Common carriers—Live stock—Negligence—Evidence—Presumption.*

Where horses and colts in good health and condition are placed in a car in a proper manner, and the car is in good condition and securely closed, and it appears that when the car reached its destination one of the horses had died on the way and its body had been removed, and the remaining stock showed external injuries, and the owner who met the stock upon its arrival was given no proper opportunity to examine the car, or see the body of the horse that died, it is error in an action against the company for injuries to the stock to enter a nonsuit. In such a case, in the absence of a special contract, the burden of proof is on the carrier to show that it was not negligent.

Argued May 6, 1913.  Appeal, No. 104, April T., 1913, by plaintiff, from order of C. P. Somerset Co., Dec. T., 1910, No. 86, refusing to take off nonsuit in case of Robert Augustine v. Baltimore & Ohio Railroad Company.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.  Reversed.

Trespass to recover damages for injuries to live stock.  Before RUPPEL, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was refusal to take off nonsuit.

J. A. Berkey, with him C. L. Shaver, for appellant.— The clear and unmistakable distinction, deducible from the authorities, existing in actions of trespass against a common carrier undoubtedly is that where an action is brought charging the common carrier with negligence, the statement alleging the common-law liability of the carrier, and no special contract limiting its liability is shown to exist, then the plaintiff need not offer affirma-

tive and positive proof of negligence upon the part of the carrier, while, on the other hand, where such special contract with the carrier is proved, the burden shifts to the plaintiff to make affirmative proof in chief of the negligence of the carrier: Pennsylvania R. R. Co. v. Raiordon, 119 Pa. 577; Needy v. R. R. Co., 22 Pa. Superior Ct. 489; Schaeffer v. Phila. & Reading R. R. Co., 168 Pa. 209; Keller v. R. R. Co., 45 Pa. Superior Ct. 383.

As we understand the authorities, the burden of proof is the same in assumpsit as in trespass in cases where a contract limiting the common-law liability is shown to exist between the parties: Patterson v. Clyde, 67 Pa. 500; Ruppel v. Allegheny Valley R. R. Co., 167 Pa. 166; Grogan v. Adams Express Co., 114 Pa. 523; Rowdin v. Penna. R. R. Co., 208 Pa. 623; Crary v. R. R. Co., 203 Pa. 525; Penn Clothing Co. v. Express Co., 48 Pa. Superior Ct. 520.

The opinion of witnesses as to the cause of the injuries should have been received: Trexler v. R. R. Co., 28 Pa. Superior Ct. 198; Schaeffer v. R. R. Co., 168 Pa. 209; Blackburn v. Adams Express Co., 43 Pa. Superior Ct. 276.

The fact that the shipper did not accompany the consignment does not change the liability for care on the part of the carrier unless, indeed, it be to increase the duty it owed to the shipper: Stewart v. B. & O. R. R. Co., 37 Pa. Superior Ct. 273; Choteaux v. Leech, 18 Pa. 224; Wallace v. Lake Shore, etc., Ry. Co., 133 Mich. 633.

*J. G. Ogle,* for appellee, cited: Ault v. Cowan, 20 Pa. Superior Ct. 616; Penna. R. R. Co. v. Raiordon, 119 Pa. 577.

OPINION BY ORLADY, J., October 13, 1913:

On August 24, 1909, the plaintiff delivered to the defendant carrier at Confluence, Pennsylvania, two horses and twenty-two colts, and consigned them to

himself at Hagerstown, Maryland. The car was supplied at the plaintiff's request for the shipment of live stock and was of the style and make—slatted and ventilated—thirty-six feet in length—then in use by the defendant. It was in a safe and sound condition and was loaded from the stockyard or pen provided for that purpose. After the shipment had been placed in the car, it was closed with the appliances attached—a bar across the inside of the door, which was then securely closed and pinned tight in the usual and customary manner, at which time the horses and colts were standing quietly and seemingly all right. The defendant's agent at Confluence was notified that the car was ready for shipment, and he informed the plaintiff that it would go forward to destination about three o'clock that afternoon. At the time of shipment each of the horses and colts were in good health and condition, and arranged in the car in the usual manner for such a shipment.

The owner and an attendant went by passenger train to Hagerstown, where they arrived about eleven o'clock the next day. The car of stock did not arrive until midnight of that day. The owner was at the station when it arrived and was informed by the conductor of the train, that one of the colts had died, and its body taken out of the car at Cumberland, an intermediate station. The remaining horses and colts were unloaded when it was found that one horse "was damaged in the legs, stiff, and badly bruised up, swollen around the knees and around the ankle and hips and badly crippled. A number were scratched and rubbed—scarred and hair rubbed off." All were taken to a pasture about one mile distant from the station. The injuries were all received during transportation as they were not on when the horses were placed in the car. As soon as the stock was taken off, the car was removed so that when the plaintiff returned at daylight no examination could be made of it, to ascertain the cause of the injuries to the shipment.

Several witnesses were called by the plaintiff each of whom had an extended experience in shipping horses, and each testified that the car was reasonably loaded and was not overcrowded, that all the stock was unshod and that they were placed in the car in the usual and customary manner in use by shippers and railroads. That the number in the car would prevent kicking or inflicting injuries on each other, and from their experience they believed that the car had been violently bumped and jarred to produce the injuries. There was no affirmative evidence to indicate the cause of the death of the horse that had been removed from the car at Cumberland, nor of the injuries sustained by the colts. On cross-examination, the plaintiff admitted his signature to what was called a Uniform Live Stock Contract, and another writing called "an extension of time limit in transportation."

This action of trespass was brought on the common-law liability of the carrier to recover the value of the horse that was not delivered, and for the injuries sustained by the others. At the conclusion of the plaintiff's case the learned trial judge entered a nonsuit, for the reason that there was no evidence to sustain the charge of negligence. Other reasons were given which we do not consider material, as they are based on the special contract which was not offered in evidence and is not before us.

While there is an apparent difference in the decisions of our appellate courts in regard to the burden of proof in such cases, an analysis of them shows a consistent rule which has always been followed. In Schaeffer v. Railroad Co., 168 Pa. 209 (a live stock case), Mr. JUSTICE FELL states: "As the action was founded upon the common-law liability of a carrier, the burden of proof as to any limitation thereof rested with the defendant, and unless it was admitted or clearly established by proof the question was necessarily for the jury. There was no evidence of an injurious accident to the train,

nor was there any direct evidence of improper or negligent handling of the cars. Injury to the contents of a car may, however, furnish ground for an inference of want of ordinary care in transportation. There is no reason why this rule with proper limitations should not apply to animate objects"—and cites a number of cases. And further, "Witnesses who had been for years engaged in shipping mules, who knew their habits and dispositions and the causes likely to lead to their injury on board cars, and who saw the mules when they were unloaded, were allowed to express their opinions as to the cause of the injuries. The value of their opinions was for the jury to determine, and we see no valid objection to admitting their testimony."

In Needy v. Railroad Co., 22 Pa. Superior Ct. 489 (a live stock case), we said by Rice, P. J., "It was held in Grogan v. Express Co., 114 Pa. 523, following American Express Co. v. Sands, 55 Pa. 140, that where the loss is wholly unaccounted for, a presumption of negligence arises which the defendant must rebut to escape liability. It is urged that this case rules the case at bar, and all agree that it would do so were it not for the special provisions of the contract under which the plaintiff voluntarily decided to ship the hogs at a reduced rate of freight, in preference to shipping them at a higher rate which he acknowledged he had the option of doing, . . . . it is an admitted fact that the plaintiff wholly omitted to perform his duties, under the contract, to the care of the hogs and the car while being transported."

The facts in the case before us are so radically different from the ones in the Needy case that it cannot be applied here. And so too in Penna. R. R. Co. v. Raiordon, 119 Pa. 577 (a live stock case), where the testimony showed that the plaintiff "was personally in charge of them, and at every stop examined the car, and that he saw nothing wrong with them to attract his attention. It showed that the death of his horse on the journey was

wholly unknown to him until he reached this city, and
he does not attempt to assign a cause for it.  The plain-
tiff's evidence left him no fact from which the legal
presumption could arise, and no proof to take its place
from which negligence in fact could properly be found
by the jury."  But in the case now considered we have
the unexplained physical loss of a horse on which full
freight charges had been paid, and physical evidence of
rough handling which caused many injuries to the others
in the car with him.  We said in Blackburn v. Express
Co., 43 Pa. Superior Ct. 276, by HENDERSON, J.,—in a
case like the present one—"The plaintiff's evidence
tended to show the application of violence to the horses
and injuries of a character not likely to be caused other-
wise than by a very severe shock or concussion.  The
only cause assigned by the defendant for the damage
to the horses was that their injuries were received from
kicks or the tramping of other horses, but the plaintiff's
evidence tends to exclude this theory and would justify
the jury in concluding that the condition of the horses
was not reasonably accounted for in any other way
than that the car in which they were carried had been
violently handled on its journey."  In that case the de-
fendant made defense and offered proof in explanation
of the accident, but this record is on a compulsory non-
suit where the proof is deduced by the plaintiff only.
In this case, as in Anderson v. R. R. Co., 31 Pa. Supe-
rior Ct. 302.  "There was sufficient direct evidence to
justify the jury in finding that the violent forcing of
other cars against this one was the immediate cause of
the injury," without any further explanation by the
defendant.  The plaintiff did not have any opportunity
to examine the body of the horse taken from the car at
Cumberland to determine the cause of its death, and
the defendant declined to make any explanation in re-
gard to it.  We do not consider the alleged special con-
tract for the reason that it is not in evidence.  The
record but shows that the plaintiff was questioned as to

the existence of such a contract but nothing further was elicited.

The learned trial judge filed an interesting opinion in refusing to lift the nonsuit, but we feel that under the above authorities the defendant should have been required to explain the manifest injurious accident to the colts that were delivered, as well as the failure to deliver the horse that was taken from the car at Cumberland, or the case should have been submitted to the jury under proper instructions: Delmont v. Express Co., 53 Pa. Superior Ct. 506.

The judgment is reversed with a venire facias de novo.