CHAS. W. SHEPHERD COTTON CO. *v.* NEW ORLEANS, MOBILE & CHICAGO R. CO.

[78 South. 193, Division B.]

1. CARRIERS. *Liability of warehouseman. Goods awaiting transportation.*

Where a carrier gave a bill of lading showing that the cotton received by it was to be compressed at the owner's risk and expense, the court held that under the facts shown in the record the delivery of the cotton was not to the railroad company in its capacity as common carriers, but that it was a delivery to the railroad company in its capacity as warehouseman.

2. CARRIERS. *Liability of warehouseman. Acts and omissions constituting negligence.*

Where cotton was received by a carrier under a bill of lading, and placed with a compress company for preparation for ship-

ment, and was burned, by reason, and by means of sparks originating from one of the chimneys of one of the houses of the carrier situated upon its right of way in close proximity to the cotton, and the chimneys were not properly constructed and equipped to prevent sparks from flying out and being blown some distance by wind, and as situated, and used was a source of danger to the property situated in the compress.' In such case the carrier was negligent in the storing of this cotton or rather in having a source of fire too close to its warehouse and was liable to the shipper as warehouseman for the cotton burned.

3. CARRIERS. *Loss of goods. Negligent acts of servants.*
    Where a carrier issues bills of lading to a shipper in return for receipts given by a compress company for cotton in the latter's custody, it is liable for the loss by fire due to the negligence of the servants of the compress company in caring for the cotton while awaiting compression and loading which the railroad company had ordered done for its own convenience, and at its own cost, where such company, if it did not regard the presentation of the receipts as a tender of the cotton, or if it were not a valid tender, could have refused to issue and sign the bills of lading.

4. SAME.
    In such case the railroad company was liable for the negligence of its employees and for that of the employees of the compress company, which under the contract in this case, became the agents of the railroad company for the storing and handling of the cotton in question.

5. CARRIER. *Action for loss of goods. Question for jury.*
    Under the facts in this case where goods, under carrier's bill of lading, were placed in the custody of a compress company as the carrier's agent, and destroyed by fire caused by the negligence of either the carrier or the compress company, the question of negligence was one for the jury, and a peremptory instruction for the carrier was error.

APPEAL from the circuit court of Chickasaw county. HON. J. L. BATES, Judge.

Suit by the Chas. W. Shephard Cotton Company against the New Orleans, Mobile Chicago Railroad Company. From a judgment for defendant, plaintiff appeals. The facts are fully stated in the opinion of the court.

118 Miss.—30

*Joe H. Ford* and *Lewis, Adler & Laws,* for appellant.,

*J. N. Flowers* and *J. T. Brown,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

Chas. W. Sheppard Cotton Company filed suit in the First district of Chickasaw county against the New Orleans, Mobile & Chicago Railroad Company, alleging that on the 24th day of January, 1912, the defendant entered into a contract to transport and deliver from B. M. Hesdorffer Cotton Company, at Houston, Miss., to Hyman Miller & Co. at New Orleans, La., thirty-nine bales of cotton marked ECG of weight twenty thousand and nine hundred and twenty-five pounds, and twenty-six bales of cotton marked HAK weighing fourteen thousand, threehundred and forty-four pounds, valued at ten and fifty-two hundredths cents per pound, being of a total value of three thousand, seven hundred and ten dollars and thirty cents, and issued its bills of lading, form P 29—20M—4 11— Gill P. Co., therefor, and that said bills of lading were acquired for a valuable consideration by the plaintiff as a *bona-fide* purchaser of said cotton to be transported at the regular freight rate, and by reason of said contract it became the defendant's duty to speedily, safely, and properly transport and deliver such cotton at its destination. But the defendant failed to so deliver said cotton, to the damage of the plaintiff in the sum of three thousand and seven hundred and ten dollars and thirty cents, with interest. The defendant pleaded the general issue, and gave notice under the general issue that it would offer evidence to establish special defenses similar to the pleadings set out in *Hill Manufacturing Co.* v. *N. O., M. & C. R. R. Co.,* 78 So. 187, this day decided.

The pleadings, agreed statement of facts, and evidence in this case are very similiar to the evidence, pleadings, and facts embraced in the Hill Manufactur-

ing Company Case. The only difference is that when the shipper procured the bills of lading the railroad company did not collect any charges for compressing the cotton to be shipped, and the bills of lading in this case contained three different rates, the lowest rate being the one accepted in this case and being for compressed cotton, and the bill of lading showing upon its face that the cotton was to be compressed at the owner's risk and expense. There was the same contract shown in the agreement of facts between the compress company and the ralroad company as in the Hill Manufactoring Company Case. It seems from the agreements and evidence that the cotton tendered in this shipment was already stored in the compress by the Hesdorffer Cotton Company, and that the Hesdorffer Cotton Company procured the necessary clearance receipts upon which the bill of lading was issued. The cotton was not compressed at the time of the fire, but was in the compress at that time and was destroyed by said fire. We think under the facts in the record in this case that the delivery here was not to the railroad company in its capacity as common carrier, but that it was a delivery to the railroad company in its capacity as warehouseman. The cotton was to be compressed at the owner's expense and risk, but this provision in the bill of lading would not exonerate the railroad company from the use or reasonable care in the premises.

The evidence in this record shows that the cotton was burned in the compress by reason and by means of sparks originating from one of the chimneys of one of the houses of the defendant situated upon its right of way in close proximity to the cotton, and that the chimneys were not properly constructed and equipped to prevent sparks from flying out and being blown some distance by wind, and, as situated and used, was a source of danger to the property situated in the

compress.   If the facts testified to by the plaintiff's witnesses are accepted as being true, it would be sufficient to show negligence in the storing of this cotton, or rather in having a source of fire too close to its warehouse.

In the case of *Arthur* v. *Texas & Pacific Ry. Co.,* 204 U. S., 506, 27 Sup. Ct., 338, 51 L. Ed., 590, the supreme court of the United States, in a case similar to the present case, held that, where a carrier issues bills of lading to a shipper in return for receipt given by a compress company for cotton in the latter's custody, it is liable for loss by fire due to the negligence of the servants of the compress company in caring for the cotton while awaiting compression and loading which the railway company had ordered done for its own convenience and at its own cost, where such company, if it did not regard the presentation of the receipts as the tender of the cotton, or if it were not a valid tender, could have refused to issue and sign the bills of lading.   In the course of the opinion the court said:

"But when these receipts were handed by the plaintiffs to the defendant's agent, who took them and issued a bill of lading to the plaintiffs, the constructive possession and the entire control of the cotton passed to the defendant."

In the present case the contract between the railroad company and the compress company required the cotton for which the bill of lading was issued to be prepared in a certain way, and that no duplicate receipts or contracts would be given by the compress company. As shown in clause 10 of contract between the railroad company and the compress company, showing the obligations of the compress company to the railroad company under circumstances like the present case, the compress company agreed to protect, defend, and hold the railroad company harmless from all liability, damages, losses, or claims that may arise from the

loss or injury or delay of loaded cotton or billed cotton, or any part thereof, from the time of delivery to the compress until the redelivery to the railroad company of cotton in transit and warehoused cotton, and from the time of the issue of the bills of lading by the railrad company until the delivery to the railroad company of loaded and billed cotton, etc. The railroad company and the compress company in making this agreement recognized the liability of the railroad company, at least as a warehouseman, from the time of the issuance of the bill of lading, and while the railroad company is not liable as an insurer in the present case, it is liable for the negligence of its employees and for that of the employees of the compress company, which, under the contract, became the agents of the railroad company for the storing and handling of the cotton in question.

Under the facts in this record it was error to grant a peremptory instruction, but the question should have been submitted to the jury under proper instructions to determine whether the fire was caused by the negligence of the railroad company or its servants. The judgment is accordingly reversed, and the cause remanded.

*Reversed and remanded.*