Villari et al., *v.* James, Appellant.

Argued December 10, 1943; reargued March 13, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Edmund W. Kirby*, of *Byron, Longbottom, Kirby & Pape*, for appellant.

*Milford J. Meyer*, with him *Albert M. Hankin*, for appellees.

OPINION BY HIRT, J., July 19, 1944:

Sam Villari, one of plaintiff partners, bought 162

hogs at public auction at City Stockyards, Inc., in Elizabeth City, North Carolina. At his request a representative of the stockyard arranged with defendant to haul the hogs in one of his trucks to Philadelphia for an agreed price. Plaintiffs contemplated buying additional hogs and, included in the transportation charge, defendant agreed to haul these also if plaintiff would "double deck" the truck and load them. Villari did buy 58 other hogs from a farmer who brought them to the stockyard for loading. At plaintiffs' request and at their expense employees of the stockyard arranged for lumber at a mill and built a second deck on the truck. At 5 P. M., February 18, 1943, the 220 hogs were loaded on the truck by an employee of the stockyard. The truck was open at the top. Defendant's driver proceeded to Philadelphia with the load driving throughout the night; on arrival there, twelve hours later, it was found that the front part of the floor of the upper deck had given way; 80 hogs were dead and 8 were missing. The value of the dead and missing hogs admittedly was $1,057.79, and in this action tried by a judge without a jury, judgment was entered for plaintiff, against the defendant in that amount. Although defendant in this appeal questions the refusal of judgment in his favor n.o.v., it is clear that he is not entitled to judgment on this record. The single question meriting consideration (although not raised by an assignment of error) is whether we should grant a new trial in the interests of justice.

Defendant at the trial admitted that he was "a common carrier, registered with the Interstate Commerce Commission." In response to the judge's question: "For the purposes of this case, then, it is admitted that he is a common carrier?", defendant's counsel answered "yes." Regardless of the admission we are of the opinion that the contract, in law and in fact, was one of common carriage. There is no evidence of a special

contract of carriage entered into by defendant as an ordinary bailee for hire.

"A common carrier is regarded as an insurer of the safety of the goods against all losses except such as may be caused by the acts of God or the public enemy; and exceptions may arise from the fault of the owner, or from some inherent defect in the goods, or upon an express contract that the carrier shall not be liable for loss from a specified cause. In all such cases the burden is upon the carrier to establish the fact which will bring his case within an exception to the rule": *Steamship Co. v. Smart,* 107 Pa. 492. "A contract relied on as limiting the carrier's common law liability must be unequivocal and unambiguous, leaving nothing to implication or inference, and not open to any reasonable doubt as to the intention of the parties": *Atlantic Refining Co. v. Pa. R. R. Co.,* 270 Pa. 415, 113 A. 570. In that case the bill of lading specifically relieved the carrier from liability where the loss occurred because of "the act or fault of the shipper." In its opinion the Supreme Court said: "A second defense urged rests upon that provision of the bill of lading which relieved the carrier from liability where the loss occurred by reason of 'the act or fault of the shipper.' This was a mere declaration of one of the exceptions to the carrier's common law liability of insurer." Since the contract in the present case was one of common carriage, the burden was upon the defendant to show that the loss was within an exception to the rule if he would escape liability on that ground. *Lloyd v. Haugh,* 223 Pa. 148, 72 A. 516; *Menner v. D. & H. C. Co.,* 7 Pa. Superior Ct. 135.

Defendant, in the negotiations for his truck and a driver, had notice that 220 hogs were to be transported. He agreed to the construction of a second deck if plaintiff would install it, and the truck was delivered to a lumber mill for the purpose. When the superstructure

was completed and the hogs were loaded he accepted the shipment together with the responsibility commensurate with the risk, within the limitations of the law, for delivery at Philadelphia. We may assume that defendant inspected the loaded truck as well as the superstructure for he had the right to refuse the shipment if he considered the distribution of the load improper or the superstructure inadequate. *There is no evidence in this case that the hogs were improperly loaded, or that the second deck was of faulty design or of improper construction or that it would be likely to give way with proper driving.* In the absence of such evidence that the subsequent loss was due to other causes for which defendant was not liable *(Schaeffer v. Phila. & Read. R. R.,* 168 Pa. 209, 31 A. 1088), the finding of the lower court is justified on the ground that defendant failed to sustain the burden of proof resting upon him as a common carrier. *Atlantic Refining Co. v. Pa. R. R. Co.,* supra; *Augustine v. Balt. & O. R. R. Co.,* 55 Pa. Superior Ct. 126.

Even if the evidence had established an implied special contract of common carriage with some limitation on defendant's liability (because of the nature of the shipment and the fact that plaintiffs through their agent, built the superstructure and loaded the hogs) the result would be the same although by the application of different principles. A common carrier by contract may limit his liability in some respects but he may not thereby relieve himself from the consequences of his own negligence. *Penn. R. Co. v. Raiordon,* 119 Pa. 577, 13 A. 324; *Quaker Mills Corp. v. Howard Corp.,* 131 Pa. Superior Ct. 1, 198 A. 691. In such situation the burden of proving defendant's negligence as an inducing cause of the injury rests upon the plaintiff. *Augustine v. Balt. & O. R. R. Co.,* supra. But evidence of the nature of the injury in itself may meet the burden on plaintiff and raise an issue for the jury if from it negli-

gence in handling the shipment may be inferred. In *Blackburn v. Adams Express Co.,* 43 Pa. Superior Ct. 276, (where the limitation of defendant's liability in the contract was a stated value of $75 for each horse shipped) this court said: "The carrier's contract was not one of insurance of the lives of the animals transported, but one of indemnity against loss arising from negligence in the course of the carriage. Unless the evidence tended to show that the loss was a consequence of some wrongful act of the defendant, the plaintiff had no cause of action. A distinction exists between animate and inanimate objects and between property liable to rapid loss or deterioration because of some inherent quality not connected with the manner of transportation and that which is not liable to such change. Where the injury may have been the result of natural causes not related to the carrier's responsibility something more than the mere fact of the loss must be shown. The plaintiff must establish the defendant's default. Where the property is inanimate and not subject to deterioration and is shipped in good condition the fact that it arrives in a badly damaged condition at its destination raises an inference of negligence as to the manner of transportation; and in the case of animate property the injury may be of such a nature as to indicate violent or careless handling in the course of transportation and therefore evidence of negligence proper for the consideration of the jury: *Laing v. Colder,* 8 Pa. 479; *Davenport v. R. R. Co.,* 10 Pa. Superior Ct. 47; *Schaeffer v. P. & R. R. Co.,* 168 Pa. 209."

Applying these principles to the facts in the present case, it was a reasonable inference for the lower court sitting without a jury that the floor of the superstructure deck gave way not from improper construction or improper loading, but from careless driving. Fifty-eight of the dead hogs weighed a total of about three

tons; the weight of the remaining 162 hogs in the shipment does not appear. But defendant's driver had a heavy load of live animals and injury from careless driving was likely to occur. He testified that the "road was a little rough." He covered about 350 miles to the outskirts of Philadelphia in less than 12 hours including time spent in Wilmington, Delaware, where he stopped for his own convenience. The eight hogs which were missing did not escape over the top because of a break in the front floor of the superstructure next to the cab. That cause could hardly have that effect. The suffocation of the eighty hogs might have been prevented or the loss at least minimized by reasonable inspection of the shipment in transit. Under the circumstances that was one of defendant's duties as a carrier of live stock by truck. 9 Am. Jur., Carriers, §483. One of the duties of a common carrier is to employ trustworthy and competent servants. *Willock v. Railroad*, 166 Pa. 184, 30 A. 948. The driver testified that he "attempted to look into the truck" but only once (at Wilmington) and that then it was too dark for him to observe the condition of the hogs intrusted to his care. He had not provided himself with a flash light and he did not move his truck to a place where he could see.

Accordingly the lower court properly found: "The damages were not the result of natural causes unrelated to the carrier's responsibility; they were of such a nature as to indicate violent or careless handling in the course of transportation. The physical condition of the temporary superstructure, the asphyxiation of some of the hogs and the unexplained loss of others, when the conveyance reached Philadelphia are evidence that the cargo was subjected to violent, rough handling or carelessness in the course of transportation."

This finding has the force and effect of a verdict of a jury. *Moore v. W. J. Gilmore Drug Co.*, 131 Pa. Su-

perior Ct. 349, 200 A. 250. There is evidence sufficient to support it and the judgment entered thereon should not be disturbed.

Judgment affirmed.

DISSENTING OPINION BY KELLER, P. J.:

I feel obliged to enter my dissent.

It seems to me clearly established by the testimony that the suffocation and death of eighty of plaintiffs' hogs was due to the collapse of the floor of the superstructure, built on defendant's motor truck by the plaintiffs' agents, at their request, in order to permit them to ship more hogs than could be hauled in defendant's truck; that defendant had nothing whatever to do with suggesting, ordering, building or accepting the superstructure, or loading the hogs upon it; and he received no compensation whatever for the extra weight thus hauled by his driver; that all of these things were the responsibility of the plaintiffs or their agents.

That the collapse of part of the floor of the superstructure, thus precipitating some of the hogs loaded upon it onto the hogs loaded in the truck proper, resulting in the suffocation and death of eighty of them was due to some weakness or defect in the construction of the superstructure must be the reasonable and logical inference rather than the acceptance of the suggestion of improper driving of the truck, based wholly on a chance remark of the driver that "the road was a little rough." It was Highway Route No. 13, the direct route from Elizabeth City, North Carolina, to Philadelphia, via Wilmington; and to ascribe the collapse to improper driving because of that remark, rather than to faulty construction or overloading of the superstructure is to my mind wholly unreasonable.

If the instrumentality which caused the death of these hogs had been the defendant's, the burden would have rested on him to show that its collapse was not due to

faulty construction or other cause chargeable to him—but it was not; it was the plaintiffs', and before they could hold the defendant responsible for its collapse, they were obliged to show that it was properly built of substantial materials capable of carrying the load they placed upon it.

Defendant's driver had a right to assume that plaintiffs had built a superstructure capable of safely transporting the hogs loaded upon it. It was not his duty to inspect or approve it.

The *truck itself* was not injured in any manner by the trip—only the superstructure. What *plaintiffs* did with the superstructure does not appear in the record. When *defendant* arrived in Philadelphia, after his driver's arrest, the superstructure was gone.

Sam Villari, the head of the plaintiff firm, and his witness, who built the superstructure, were both in court and testified, but they failed to give any testimony whatever showing the soundess of the super-imposed construction.

The authorities cited by the court below and by the appellees do not support this judgment. They do not hold the carrier responsible for loss to animals shipped by a plaintiff, occurring through the breaking or collapse of a facility or means of transportation supplied by the shipper himself.

For instance in *Blackburn v. Adams Express Co.*, 43 Pa. Superior Ct. 276, affirmed in 230 Pa. 635, this court said: "Unless the evidence tended to show that the *loss was a consequence of some wrongful act of the defendant,* the plaintiff had no cause of action."

Inspection of the hogs on the way, after the collapse of the floor, would not have saved the loss. What practical means of avoiding loss, could the driver have taken at night, in the dark, after the collapse? The loss was the consequence of the collapse of plaintiffs' superstructure.

In *Penna. R. R. Co. v. Raiordon*, 119 Pa. 577, 13 A. 324, Mr. Justice WILLIAMS, speaking for the court, said: "If, for any reason, an 'injurious accident' happens to, or by reason of, *that which the carrier provides for the transportation,* the law ...... presumes the accident to be due to the want of that care and puts upon him the duty of successfully relieving himself from that presumption." (Italics supplied) But this 'injurious accident' happened by reason of something which the *shipper*—not the *carrier*—provided for the transportation and the duty of showing that it was properly and aedquately built or constructed rested on the shipper, not the carrier.

Just how the eight hogs which were missing got away, the evidence does not show. It does not show how high the sides of the superstructure were, or how it was constructed—whether it was closely boarded up or spaces were left between the uprights or siding boards, if any. It was entirely open at the top. Eight of the hogs may have clambered on top of other hogs at the front end of the superstructure body, where the floor afterwards collapsed, and got away from the vehicle before the collapse came. But there is no evidence on the subject, and the defendant must be held liable for the eight missing hogs.

But, in my opinion, there is no evidence in the record which shows any wrongful act of the defendant, or his driver, which caused the collapse of the floor of the superstructure, and as the death of the eighty hogs was due to the collapse, the defendant cannot be held liable for their loss, and the plaintiffs must be held responsible for the loss resulting from the collapse of the floor of the superstructure provided by them.

Judge RHODES and Judge JAMES join in this dissent.