**FLETCHER L. YARBROUGH & CO. v. TEXAS & N. O. RY. CO.**

**No. 14135.**

Court of Civil Appeals of Texas. Dallas.
Dec. 2, 1949.

Rehearing Denied Jan. 13, 1950.

Thompson, Knight, Wright, Weisberg & Simmons, and James E. Henderson, all of Dallas, for appellant.

Robertson, Jackson, Payne, Lancaster & Walker, and Orrin Miller, all of Dallas, for appellee.

BOND, Chief Justice.

Appellant Fletcher L. Yarbrough & Company, hereinafter referred to an Owner or Shipper, instituted this suit against appellee Texas & New Orleans Railway Company, hereinafter referred to as Carrier, for the loss of 152 bales of cotton destroyed by fire November 25, 1945, while on the platform of the Bryan Compress & Warehouse Company at Bryan, Texas,—hereinafter designated as Compress. The cotton was first delivered by the shipper to the compress in order that the cotton could be made ready for shipment. The compress issued to the owner a ticket or receipt for each bale of cotton and, on surrender of such ticket or receipt, the compress accepted invoices prepared by the owner, covering the shipment, which directed delivery of the cotton for shipper's account to the carrier. Subsequently, the bales of cotton were marked for identification, completely compressed, and, as usual and customary between the shipper and warehouse, satisfactory arrangements were made with the compress agency to load the cotton at compress tariff at Bryan, into cars of the carrier for interstate shipment,—points outside the State of Texas. The shipper presented the invoices signed by the superintendent of the compress as well as by the shipper, to the carrier's agent who thereupon executed and delivered two uniform bills of lading to the shipper. The bills of lading, pertinent here, recite: "Received, subject to the classifications and tariffs in effect on the date of the issue of this Bill of Lading," listing number of bales of cotton including that involved here, classification and tariff, freight charges prepaid, etc. On the reverse side of the bills of lading, among the terms and conditions of the contract, is stated in part: "The carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof or damage thereto * * *." These bills of lading were executed, one on November 11, 1945, covering 52 bales of the cotton here involved, consigned to order of shipper, destination La Grange, Georgia; and the other on November 21, 1945, covering 100 bales consigned to order of shipper, destination Canton, Georgia. At the time of the fire none of the cotton had been loaded onto carrier's cars and no negligence is assigned to the carrier or owner incident to the shipment. Appellant sustained damages in the sum of $18,556.86, less a net salvage of $1,780.72.

It is agreed in stipulations of fact that the shipment was on carload freight rates; that it was on tariff effective for loading by the shipper; and that at the time of the loss and damage Section 1 of Rule 27 of Consolidated Freight Classification No. 16 (approved by Interstate Commerce Commission and the Texas Railroad Commission) was in force and applicable to the shipment in question. It reads as follows: "Section 1. Owners are required to load onto or on cars freight for forwarding by rail carriers and to unload from cars freight received by rail carriers, carried at C. L. ratings or rates, except where tariff of carrier at point of origin or destination or stopover station (as the case may be) provides for loading and unloading of C. L. freight by carrier."

It is further stipulated that the cotton described in the two bills of lading had not been loaded into the box cars of carrier, but was still on the premises of the compress; and that in the regular course of business between the shipper and the compress company the compress customarily loaded such cotton for shipper's account when the railroad company spotted cars on sidings.

This cause was submitted to the court without a jury on the agreed stipulations of fact; judgment was entered in favor of the carrier. The appeal is predicated on appellant's single point of error that "the trial court erred in holding that the

tariff requiring shipper to load prevented delivery of the cotton to the appellee railroad prior to such loading even though control of the cotton had been surrendered to the carrier which had acknowledged receipt by issuance of its bills of lading prior to the fire."

We are of the opinion that the tariff regulation involved here is not a limitation on the railroad company's liability as a common carrier. A common carrier at the common law was an insurer, and such liability still exists except as modified by the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., Michigan Millers Mut. Fire Ins. Co. v. Canadian Northern Ry. Co., 8 Cir., 152 F.2d 292; Villari v. James, 155 Pa.Super. 155, 38 A.2d 379. The obligation to transport freight partakes of "a fiduciary character as to require the utmost fairness and good faith on its part in dealing with the shipper and in the discharge of its duties to him * * *." Chicago & E. I. R. Co. v. Collins Produce Co., 249 U.S. 186, 39 S. Ct. 189, 190, 63 L.Ed. 552.

A bill of lading evidences title to and possession of goods therein specified; it represents the goods, and when executed and delivered, is constructive delivery of the goods themselves to the carrier issuing the bill of lading. The bill of lading serves the function: (1) as a receipt for the goods; (2) a contract for their carriage; and (3) evidence of title to the goods delivered to it. "While a bill of lading is generally understood to be a written acknowledgement of the receipt of goods and the contract in which is contained the agreement for their carriage and delivery at a specified time to a designated person or his order, one of its most important functions is 'to give formal expression to the stipulations and conditions under which the carrier seeks to obtain a modification or limitation of the liability that otherwise would be imposed upon it under the common law.'" Quoted in Rivera S.-C. v. Texas & New Orleans Ry. Co., 211 La. 969, 31 So.2d 180, 182.

In the case at bar the cotton was interstate shipment, on carload railroad tariff; no tariff of the carrier provides for its loading; and no agreement or contract was entered into whereby the carrier obligated itself to load or unload the cotton, or to change or alter the carrier's published tariff to include such services. The published tariff applies only where the shipper loads and unloads the freight into cars; thus the tariff applies to freight when loaded. Under the contract (bills of lading) the carrier was not obligated to load the cotton and this suit does not involve any action affecting the tariff or any damages incident to or controlled by the tariff regulatory provisions promulgated by the Interstate Commerce Commission. The loading of the freight into cars for forwarding by rail carriers is an obligatory prerequisite to obtain the carload rating or rates according to such published tariff. The published tariff chargeable to the shipper is one thing, and the contract of acceptance by and delivery to the carrier, "subject to classifications and tariffs", is another.

The cotton involved here was delivered and accepted by the carrier for shipment under carrier's tariff while on the compress platform,—the carrier patiently enduring execution of the existing contract between the shipper and the compress for loading of the cotton, as evidenced by the invoices and the agreed customary established practice between the parties. The surrender of the bills of lading (under the stipulation of facts) was the only means by which the shipper or owner could have regained the cotton or exercised dominion over it, other than the loading on defendant's cars. Thus the bills of lading, in light of the shipper directing the compress to deliver the cotton to the carrier and to load the cotton for shipper's account and the acceptance of the shipment by the carrier "subject to classifications and tariffs," place the carrier in legal possession of the cotton and, in absence of negligence, liable as at common law for any loss thereon or damage thereto. "The issuance of a bill of lading carries the presumption that the goods were delivered to the carrier issuing the bill, for immediate shipment, and it is nowhere questioned that a bill of lading is prima facie evidence of the re-

ceipt of the goods by the carrier." 13 C.J.S. Carriers, § 123, p. 235. Thus cotton on a platform, under bill of lading, compressed, marked, and awaiting loading, in control and custody of the railroad, the shipment is considered " * * * as having commenced from the time of the signing of the bill of lading, and the liability of the common carrier shall attach, as at common law, from and after such signing." Art. 886, Vernon's Ann.Civ.St. And the carrier is liable as a common carrier of freight for damages or destruction thereto.

In Missouri, K. & T. Railway Co. v. Union Ins. Co., Tex.Civ.App., 39 S.W. 975, 976, the railroad denied liability on the ground that the cotton had not been delivered to it, though located on the compress platform, under bill of lading, awaiting compression and loading; the court said: " * * * the general rule is that there must be an actual delivery to the carrier, in order to create its common-law liability for carriage; but this does not mean, in all instances, an actual delivery. It may mean such a delivery as the parties among themselves may agree upon as sufficient, in placing the property under the control of the carrier * * *."

In Arthur v. Texas & Pacific Ry. Co., 204 U.S. 505, 27 S.Ct. 338, 51 L.Ed. 590, cotton was delivered by a shipper to a compress platform for shipment. The railroad issued its bill of lading and thereafter directed compression of the bales. The Supreme Court held that after issuance of the bill of lading the cotton was subject to the dominion and control of the carrier. Therefore, in the actual custody of the carrier.

In St. Louis B. & M. Ry. Co. v. U. S. Fire Ins. Co., Tex.Com.App., 60 S.W.2d 196, the Commission of Appeals, approved by the Supreme Court, after discussing the manner of handling the cotton, substantially as here, concluded that from the time the bill of lading was issued, the shipper could exercise no dominion or control over the cotton, hence the railroad company was liable as a common carrier for damages sustained by the shipment. Citing in support of the conclusion the Arthur Case, supra.

In Texas & New Orleans Ry. Co. v. J. Kahn Co., Tex.Civ.App., 156 S.W.2d 292, writ ref., the railroad company contended that cotton located on a compress platform and under bill of lading issued by the carrier, had not been delivered to the latter because at the time of the fire the cotton was yet to be compressed, marked, counted, and otherwise serviced by the compress on behalf of the shipper, at whose expense and direction such services were to be rendered; in other words, for shipper's account. The court held the railroad company liable as a common carrier under its bill of lading.

While the authorities may differ as to what constitutes delivery to a carrier, and the rule generally stated that where the goods are in possession of the shipper or his agent, and there is something to be done by the shipper before the goods are to be shipped by the railroad, there would not be a delivery as to make the railroad liable as a common carrier, our Supreme Court in the case of Gulf, C. & S. F. Ry. Co. v. Anderson Clayton Co., 246 S.W. 1031, 1032, has stated the rule: "The test as to whether property has been delivered to a carrier for immediate transportation is: Is there anything to be done by the shipper to effect the passage of complete possession or control to the carrier? If the shipper must perform some service or do some act necessary to give this control over the entire shipment to the carriers, there would be no delivery to the latter."

It will be observed that the rule announced has no application to carrier's tariff, or the duties of the shipper to load and unload the freight before carrier comes into possession of the goods. In the case here the shipper had surrendered the dominion and control of the cotton to the railroad company, with the tacit understanding that the compress company would load the cotton for the account of the shipper in compliance with the carrier's tariff. The railroad agency accepted such delivery, exercised dominion and control by the issuance of its bills of lading, thus depriving the shipper and all others of any possessory rights in the cotton, other than

the compress company loading the cotton onto the carrier's cars. The shipper had performed all necessary acts "to give this control over the entire shipment to the carrier." And accepting the shipment, with knowledge of the arrangement made for the loading, gave the carrier the unqualified right to put the cotton at once in itinere, and the carrier must have received it for that purpose.

■ ■ We think it clearly appears that under the arrangements for loading, which both parties had in contemplation when the bills of lading were issued, effective at the time of the fire, a complete delivery had been made to the carrier. The carrier's liability began when the bills of lading were issued and delivered to the shipper, trusting faith in the compress to load the cotton onto the cars, the shipper paying for the loading. The carrier's tariff is not affected. The bills of lading extended to the cotton thus delivered, receipted for, and within the dominion and control of the carrier. The judgment of the court below should be reversed and judgment here rendered in favor of the appellant for the sum of $16,776.13, together with 6% interest from December 10, 1945, and costs of suit. It is so ordered.